UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Scatchell Sr., John Scatchell Jr., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 2018-CV-03989 |
| | ) | |
| v. | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| Village of Melrose Park, an Illinois | ) | Magistrate Judge Michael T. |
| Municipal Corporation; Ronald M. Serpico; | ) | Mason |
| Sam C. Pitassi; Michael Castellan; and | ) | |
| Steven Rogowski, | ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

Plaintiffs, JOHN SCATCHELL, SR., and JOHN SCATCHELL, JR., by their attorneys, Gianna R. Scatchell, Esq., LAW OFFICES OF GIANNA SCATCHELL, and Cass T. Casper, Esq., TALON LAW, LLC, complain against the Defendants, Village of Melrose Park, Ronald M. Serpico, Sam C. Pitassi, Michael Castellan, and Steven Rogowski, as follows:

## NATURE OF ACTION

1. Plaintiff John Scatchell Sr. seeks redress for actions taken against him by the Defendants related to the exercise of his rights under the First (Speech and Association) and Fourteenth Amendments (Equal Protection), his rights under 42 U.S.C. § 1981, and for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*

2. Plaintiff John Scatchell Jr. also seeks redress for actions taken against him by the Defendants related to his father's exercise of rights under Title VII and the First, Fourth, and Fourteenth Amendment of the United States Constitution. Plaintiff Scatchell Jr. brings his claims for

1

deprivation of Fourteenth Amendment Equal Protection right to be free from retaliation, and his rights under 42 U.S.C. § 1981, all pursuant to 42 U.S.C. § 1983.

3. Both Scatchells' claims are related and because where the Village and the individual Defendants could not adequately punish Scatchell Sr. for daring to oppose the administration's will in the matter of the sole African-American Sergeant's residency case, Defendants clearly delivered the message to Scatchell Sr. that they would extend their reprisals to his son, John Scatchell Jr.

4. John Scatchell Sr.'s claims, therefore, encompass third-party reprisals against his son, and, likewise, John Scatchell Jr.'s claims encompass third-party retaliation that he has suffered because of his father's protected activity and opposition to unlawful discriminatory activity.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under federal law, specifically, the First, Fourth, and Fourteenth Amendments of the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., 28 U.S.C. § 1343(a)(4), 42 U.S.C. §§ 1981, 1983, and attorneys' fees under 42 U.S.C. § 1988.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). On information and belief, all Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

7. Plaintiff John Scatchell Sr. ("Scatchell Sr." or "Lt. Scatchell") is a resident of Melrose Park. He was employed as a full-time Melrose Park police officer from February 15, 1985 until his retirement as a lieutenant on June 7, 2018, as part of the events underlying this Complaint.

8. Plaintiff John Scatchell Jr. ("Scatchell Jr.") is a resident of Melrose Park. He was employed as a full-time Melrose Park police officer from September 26, 2012, until his retaliatory termination from such position on December 6, 2018.

9. Defendant Village of Melrose Park ("Melrose," "Village," or "MP") is a municipality incorporated in the State of Illinois and the employer of the Defendants. Melrose has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. It is responsible for the challenged actions of the individual defendants and the Village.

10. Defendant Ronald M. Serpico ("Serpico"), is an elected official serving as Mayor of the Village of Melrose Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

11. Defendant Sam C. Pitassi ("Pitassi"), is the Director of Police and acted as an agent of the Village of Melrose Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

12. Defendant Michael Castellan ("Castellan") is one of two Melrose Park Deputy Chiefs of Police and acted as an agent of the Village. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

13. Defendant Steve Rogowski ("Rogowski") is one of two Melrose Park Deputy Chiefs of Police and acted as an agent of the Village. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. All administrative remedies for purposes of the Title VII claim have been exhausted. All conditions precedent to the institution of this lawsuit have been fulfilled including receipt of

3

the right-to-sue letter issued by the EEOC on March 9, 2018. A copy of the Right to Sue letter is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

### I. Background

15. Plaintiffs' family has been a pillar of the Melrose Park community, having dedicated over 100 years of collective service to the Village through a long line of public servants since 1960. This tradition began with Scatchell Sr.'s father-in-law who served as a firefighter and rose through the ranks as the fire chief until his retirement in 1997. Scatchell Sr.'s brothers-in-law, numerous relatives, and close family friends have devoted themselves to the safety and protection of Melrose Park by serving on both the fire and police departments.

16. Scatchell Sr. was employed by the Melrose Park Police Department for over 33 years. He performed his job duties as a police officer with skill, competence, and professionalism.

17. Scatchell Sr. also served as the President of the Fraternal Order of Police, Lodge 19 ("FOP"), MPPD's exclusive bargaining agent, from approximately 2008 to 2017.

18. Scatchell Jr. followed in his father's footsteps and served as a Melrose Park police officer. He performed his job duties as a police officer with skill, competence, and professionalism.

19. Scatchell Sr. has known Serpico for several years and had a friendly rapport. For example, before Serpico was Mayor, Scatchell Sr.'s family hired Serpico as their lawyer. Additionally, when Serpico ran for Mayor in 1997, he asked Scatchell Sr.'s wife to serve as his Village Clerk.

20. Before November 2016, the Plaintiffs were not in any known adversarial relationship with Mayor Serpico or the other Defendants.

### II. Scatchell Sr. Opposes Melrose's Selective Enforcement against its only African-American Police Officer

21. Melrose requires its police officers, firefighters, and other employees to live within Village limits unless the employee is exempt pursuant to the Village of Melrose Park Code of Ordinances § 2.52.020, §2.52.090.

22. On or about May 1, 2016, Melrose began selectively enforcing its residency requirement.

23. This action had a significantly adverse or disproportionate impact on certain employees in the protected group of race in violation of Title VII. Then-Sergeant Kyll Lavalais ("Lavalais"), the only African American police officer in Melrose Park, was one such person affected.

24. Specifically, Lavalais was forced to move his family to Melrose or be terminated when he was the next sergeant to be promoted to lieutenant and was a mere 2-years away from being able to "max" out his pension benefits.

25. On or about October 1, 2016, as president of the FOP, Scatchell Sr., received Lavalais' Third Grievance and request to arbitrate the residency issue.

26. On or about October 30, 2016, the FOP retained an attorney Ms. Scatchell, for guidance on Lavalais' grievances and pending disciplinary matter.

27. Lavalais was hired pursuant to the consent decree and had experienced multiple instances of racial discrimination. On three separate occasions, Lavalais filed charges with the EEOC based in racial discrimination, disparate treatment, denial of transfer, and retaliation for filing an EEOC charge. In February 2011, Lavalais was promoted to sergeant and placed on the midnight shift. Over one year later, Lavalais requested a different shift, but was denied.

28. In July 2012, Lavalais filed his third EEOC discrimination charge alleging disparate treatment and denial of transfer based on race. Lavalais then sued the Village and Pitassi alleging employment discrimination and retaliation for having filed EEOC charges.[1]

29. On or about November 10, 2016, Scatchell Sr., for the FOP, took the position that the FOP would arbitrate on behalf of Lavalais' for three reasons: (1) Lavalais was the only Village employee that was covered by the residency exemption since he was hired under the consent decree. (2) Melrose's enforcement of the residency ordinance relied on an unconstitutional statute (5 ILCS § 315/15)[2] as a pretext for discipline. (3) Melrose's written policy is not the policy that it applies to select police officers. Specifically, certain non-African-American police officers live outside of Melrose Park and are not facing termination.

### III.  Scatchell Sr.'s Surprise Promotion to Deputy Chief

30. The next day, on November 11, 2016, Melrose distributed its bi-monthly Village meeting agenda, which included a surprise promotion: "*Lt. Scatchell will be promoted to deputy chief until 01/15/2017."*

31. Scatchell Sr. was out of town when this promotion was announced. He learned about this promotion from people who had seen the agenda and called to congratulate him.

32. None of the Melrose administrators called Scatchell Sr. to tell him about his promotion.

33. On November 11, 2016, Melrose Park attorney, James Vasselli ("Vasselli"), stated that the "01/15/2017" date was a typo.

---

[1] *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)( "significantly reducing an employee's responsibilities is also considered an adverse employment action, regardless of whether an employee's title and salary remain the same.")
[2] *In re Pension Reform Litigation*, 2015 IL 118585

34. Later, on November 11, 2016, Melrose posted a Revised Agenda that removed the January 15, 2017 "typo" to read: *Lt. Scatchell will be promoted to deputy chief.*

35. Scatchell Sr. requested a contract to govern the terms of the deputy chief position because this appointment meant that Scatchell Sr. would be serving at the Mayor's pleasure and leaving the protection of a rank-and-file employee.[3]

36. On information and belief, this promotion was designed to secure Scatchell Sr.'s opposition to Lavalais' arbitration.

### IV. <u>Scatchell Sr.'s Promotion is "Tabled"</u>

37. On November 14, 2016, at the Village Board Meeting, Mayor Serpico, without any justification, moved to "table Lt. John Scatchell's promotion." The Motion carried, and Scatchell Sr.'s promotion was tabled.

38. The democratic process in Melrose is a sham because, upon information and belief, **not one** Village Trustee has voted against a single ordinance, resolution, or proclamation proposed by Serpico since at least 2010.

### V. <u>Scatchell Sr. is Accused of Taking Two "Adverse" Positions to Melrose Park</u>

39. On November 22, 2016, Village Attorney, Michael DelGaldo confirmed the retaliatory motive:

> *[you] the purported attorney for the FOP, have [sic] taken **<u>an adverse position</u>** to the village and **<u>have twice threatened suit</u>** against the Village over **<u>two separate matters</u>**.* (emphasis added)

40. Scatchell Sr. refused to back down from the FOP's position, which triggered an ongoing campaign of harassment from the Defendants.

---

[3] MP Ordinance #1290 provides that Police Chief Pitassi has a contract governing the terms of his employment.

41. On information and belief, following these two "adverse actions," Defendants Serpico, Pitassi, Castellan, Rogowski, and others agreed to retaliate against Scatchell Sr. for his position, preparing a "hit list" of police officers who were to suffer adverse employment actions as punishment for their actual or perceived support of Scatchell Sr.

## VI. <u>Scatchell Sr. is Passed up for his Promotion</u>

42. On or about November 25, 2017, Melrose distributed its bi-weekly agenda for the November 28, 2017 board meeting.

43. The Agenda stated that Rogowski would be promoted to deputy chief instead of Scatchell Sr.

44. Melrose promoted Rogowski even though Scatchell Sr. ranked the third highest in seniority on the MPPD; his promotion was still "tabled"; and Melrose's 2017 Budget allocated funds for one (1) deputy chief.

45. On information and belief, Rogowski was improperly appointed to the position because the Village never fulfilled the condition precedent (selection by the Personnel Board ("Board")).[4]

46. On information and belief, no other Melrose employee has been placed on the Agenda to receive a promotion only to have that promotion "tabled" and then subsequently passed up.

## VII.    <u>Additional Relevant Events</u>

47. On November 29, 2016, the FOP filed its demand for arbitration on behalf of Lavalais.

48. On December 8, 2016, FOP Lodge 19 held its annual election, and Scatchell Sr. lost the election to Raul Rodriguez ("Rodriguez").

49. On December 16, 2016, a patrol officer on Scatchell Sr.'s shift left Roll Call without permission. The following text exchange between the Officer and Scatchell ensued:

---

[4] [A]ll members of the police department … shall be officers of the village and shall be appointed by the board of fire and police commissioners of the village. The appointments shall be concurred in by the president and board of trustees, voting jointly.

| | |
|---|---|
| Officer: | *I feel like shit I'm going home* |
| Scatchell Sr. | *Ok next time wait for me to come in do not walk out of roll call!* |
| Officer: | *I'll respect when I get respect.* |
| Scatchell Sr. | *Walk out of my roll call again, and you will be in the station until further notice.* |
| Officer | *Shut the fuck up* |
| Scatchell Sr. | *Really you could write a to from to that then, or meet me in the Chiefs [sic] office in the morning.* |

50. Said officer never complied with the direct order to write a to/from memorandum.

51. Scatchell Sr. wrote a to/from to Deputy Chief Castellan explaining the insubordination.

52. Castellan responded to Scatchell Sr.'s to/from that the officer would not be disciplined, and that the case was closed.

### VIII.   Scatchell Sr.'s house is hit with 3-Quarter Sticks of Dynamite

53. On December 22, 2016, on or about 2:30 a.m., someone threw three ¼ sticks of dynamite at Scatchell Sr.'s house.

54. Scatchell Sr. called the Melrose Park Police Department to report this crime.

55. Scatchell Sr. discovered that some of the newly-elected FOP Board and other off-duty officers were attending a party a couple blocks from Scatchell Sr.'s house. Many of these officers had become adversarial with him.

56. The responding officer Cacciatore went to that off-duty officer's residence to see if anyone had seen or heard anything. That produced negative results.

57. Shortly thereafter, the off-duty officer called officer Cacciatore and threatened him by stating:

*Who the fuck are you to come ring my doorbell at my house? You come to my house again you motherfucker and I'll destroy you" … "you ring my doorbell again and I will come after you with everything I have and you can bring John [Scatchell Sr.] with you*

58. Defendants deviated from policy by failing to investigate the incident thoroughly and objectively as illustrated below:

    **a)** No additional watches were put on Scatchell Sr.'s house (as is customary with any threats to officer safety);

    **b)** Rogowski administratively locked the report so that no one could access it;

    **c)** No one interviewed the complaining witnesses, such as Scatchell Sr.'s wife.

    **d)** No one inspected or collected the dynamite fragments found on the property;

    **e)** Rogowski never responded to Scatchell Sr.'s text messages. Instead, several days later, Rogowski emailed Scatchell Sr. that he closed the matter due to insufficient evidence. Rogowski and Scatchell Sr. never communicated via MPPD email. Scatchell Sr. did not have access to his MPPD email account.

## IX. The New FOP Board is Installed

59. On January 8, 2017, the FOP filed its revised demand for arbitration on behalf of Lavalais.

60. On or about January 10, 2017, the new FOP Board was sworn in.

61. The new FOP board strayed from its established protocol by proposing, voting, and acting on new business: namely, to terminate Ms. Scatchell as the FOP attorney; to hire a new attorney, and to withdraw Lavalais' demand for arbitration.

62. Rodriguez terminated Ms. Scatchell because of "differences with her father."

## X. Scatchell Sr. is Constructively Demoted

63. On or about April 15, 2017, Scatchell Sr. attended a Melrose Park Pension Board meeting and opposed the Board's directive to allow Peter Caira, a lateral transfer, to transfer his pension to the MPPD's pension. Scatchell Sr. opposed this pension transfer because MPPD's pension is less than 30% funded.

64. Two weeks later, on or about May 1, 2017, Scatchell Sr. was involuntarily transferred from "Shift Supervisor" to "Station Supervisor."

65. Pitassi notified Scatchell Sr. of his "Assignment Change" by a letter that said:

> *Effective May 8, 2017, you will [sic] assigned to 4-12 shift station supervisor. Your duties will be outlined at a later date. Your days off are Saturday and Sunday and will receive holidays off.*

66. Unsolicited assignment transfers rarely, if ever, occur mid-shift without some extenuating circumstance.

67. No extenuating circumstance was communicated. Instead, when Scatchell Sr. asked Pitassi why he was being transferred, Pitassi responded: "Mayor Serpico ordered it."

68. Defendants significantly diminished and restricted Scatchell Sr.'s job responsibilities and retaliated against him by:

    a) Transferring Scatchell Sr., mid-shift, to a permanent 4-12 shift with no defined scope, no budget, and no opportunity for overtime.

    b) Moving him from a shared office with other supervisors to an unfavorable location—a secluded office known among MPPD officers as "the hole."[5] The walls were filthy, there were no blinds on the windows, and ceiling tiles were missing. Scatchell Sr. had to wash the walls and pay for and install blinds.

    c) Ostracizing Scatchell Sr. by excluding him from supervisor meetings he usually attended. Castellan scheduled such meetings.

    d) Castellan boasting to other officers that Scatchell Sr. has been "demoted, sentenced to the 'hole' and stripped of all his responsibilities."

---

[5] The "hole" is where the MPPD Brass put supervisors who fall out of favor with MPPD leaders as punishment.

e) Diminishing Scatchell Sr.'s standing as a senior staff member by substantially reducing his responsibilities. He went from supervising 15 officers to zero officers.

f) Depriving Scatchell Sr. of proper resources, making it difficult to carry-out responsibilities. For instance, Pitassi ignored or denied several building code violations and repairs that Scatchell Sr. reported.

g) Cutting off his access to administrative support services. Scatchell Sr. lost access to the office computer and the Internet. On various occasions, he informed the IT staff, but his requests were ignored.

h) Scrutinizing Scatchell Sr.'s work, and attendance more closely than other officers and without justification. Pitassi even warned him that the "eyes of Texas were on him." Scatchell Sr. perceived that to mean that Defendants were watching his every move.

i) Ordering Scatchell Sr. to remain in the office, while the daytime shift supervisor freely came and went from the office and continued to respond to police calls. Scatchell Sr. risked discipline if he did the same.

69. This reassignment was a step backward for Scatchell Sr. professionally because it was a non-supervisory role with non-substantive duties.

70. Pitassi provided him no scope, no job description, no budget, and no legitimate work assignments.

71. Scatchell Sr. was effectively on "house arrest" in retaliation for having "taken adverse positions" to Melrose.

72. Scatchell Sr. remained in this position until he retired in June 2018.

### XI. Individual Defendants Try to Pin a False Case on Scatchell Sr.

12

73. On August 9, 2017, Lavalais' arbitration was scheduled. Scatchell Sr. was going to testify on Lavalais' behalf.

74. On August 30, 2017, on information and belief, as retribution for taking another "position adverse to the Village" the Individual Defendants directly, personally, and in concert, attempted to pin a false case on Scatchell Sr.

75. At approximately 11:25 p.m. Scatchell Sr. was backing out of his driveway when a driver "swerved around his truck at a high rate of speed and drove up on his driveway apron and then re-entered the roadway from the parkway." A NestCam recorded the entire incident.

76. Scatchell Sr. believed that the driver was impaired, so he pulled the driver over, and requested officer assistance.

77. Upon arrival, two of the officers subsequently corroborated Scatchell Sr.'s position that the driver was driving erratically, disobeying traffic signals, and talking on his phone. The driver was issued citations for the traffic infractions.

78. The police report was written the next day by Castellan's nephew, Giovanni Castellan ("Castellan Jr.") and Castellan's godson, Robert Anzaldi, Jr. ("Anzaldi").

79. On or about September 1, 2017, the driver's parents emailed Mayor Serpico to complain about Scatchell Sr. (hereinafter "Morales Incident").

80. On September 5, 2017, Rogowski responded to Morales' parents by attaching a blank Citizen's Complaint form to the following email:

Please ask your son to be as detailed as possible, such as descriptions of the involved officer(s), name(s) of the involved officer(s) if known. What was said in detail. A full description of any and all force used by the officer(s). As an example "pulled me my my right arm".

You or your son can feel free to contact me on my cell phone ▉▉▉ ▉▉▉▉ you have any questions or would like to meet with me to assist in filing the complaint.

I will continue to investigate this matter but the information you may supply is crucial to me seeking corrective actions against the officer(s) if the allegations are sustained.

Thank you for your help in this matter and please accept my apology that your contact with our Department resulted in a negative interaction.

**81.** On September 18, 2017, Rogowski again deviated from protocol by offering to appear on behalf of Mr. Morales at the upcoming hearing. Rogowski is not an attorney. It is not Village policy for the police to represent offenders in court.

On September 18, 2017 at 10:58 AM Steven Rogowski <srogowski@melroseparkpd.com> wrote:

Mr. Morales,

When I responded last week to your question about your son attending the hearing for the citations issued I didn't realize that the initial court date was this week. Please tell him he doesn't have to appear this Tuesday the 19th. On the initial date the hearing officer justs assigns a trial date. I will appear on his behalf and request a hearing date. Hopefully as a result of my investigation a hearing may not be needed. But if required I will provide the proper date.

Sorry for the misunderstanding.

Steve Rogowski

**82.** Rogowski never informed Scatchell Sr. of the September 19, 2017 court date.

**83.** While investigating the Morales Incident, Defendants took the following actions, which all deviated from established protocol:

   **a)** Administratively locked the police reports relating to this incident;

   **b)** Not informing Scatchell Sr. he was being investigated;

   **c)** Not interviewing Scatchell Sr.;

**d)** Never reviewing the NestCam footage;

**e)** Denying several FOIA requests under the guise that the records were part an "active investigation" and any disclosure would "interfere with the investigation."

### XII.   Defendants Retaliate against Scatchell Sr. for Filing his EEOC Charge

84. On September 15, 2017 and September 18, 2017, Scatchell Sr. filed a complaint and supplemental complaint with the Equal Employment Opportunity Office ("EEOC") for retaliation, but that only made things worse.

85. On or before October 25, 2017, Defendants received Scatchell Sr.'s EEOC Charge.

86. Within days of learning about the EEOC complaint, the MPPD became an increasingly hostile work environment. Specifically:

**a)** On or about September 18, 2017, FOP President, Rodriguez, posted erroneous allegations to the FOP community bulletin board that Scatchell, Sr. had acted outside of the Department's mission.

**b)** On or about September 20, 2017, Pitassi informed Scatchell that he received an anonymous letter accusing him of a myriad of misconduct.

**c)** Defendant Pitassi was observed saying: "If they want a war, we'll give them a war." Scatchell Sr. perceived this to be a threat.

**d)** On October 26, 2017, Melrose Park's director of human resources called Scatchell Sr. asking if his security company would hire her brother (a convicted felon). Scatchell Sr. does not own a security company. His cousin, John Scatchell does. On information and belief, this was another retaliatory act designed to see if Scatchell Sr. violated the Village's secondary employment disclosure requirement.

e) On October 26, 2017, two months after the Morales Incident, Rogowski launched an informal investigation against Scatchell Sr. and requested that the officers and supervisor on scene write to/from memos. Neither Scatchell Sr. and Scatchell Jr. were asked to write a to/from memo even though both were on scene.

f) On October 26, 2017, Castellan Jr. and Anzaldi each wrote falsified to/from memos to their supervisor that contained new and unsubstantiated allegations from the original police report that Anzaldi Jr. wrote nearly two months earlier.

g) On December 11, 2017, Melrose revised its ordinances to retire police officers and firefighters at age 62 automatically.[6]

h) On January 18, 2018, MPPD's new § 7.9 CBA was enacted to allow an exception to the mandatory retirement ordinance. If an Officer is 62 and ". . . has not achieved 30 pension creditable years, [he or she] may remain a member of the police department until the date the officer's 30 pension creditable years has been obtained." This precluded Scatchell Sr. from remaining a police officer, but has the absurd effects of allowing another officer to remain an active officer until he is 67 years old.

87. Scatchell Sr. was harassed into an early retirement on or about June 7, 2018.

88. On July 6, 2018, the Village's Human Resources Director, Christine Piemonte, sent Scatchell Sr. a certified letter demanding that he return a laundry list of purported police property to Defendants Castellan or Pitassi in 24 hours or else the MPPD "may pursu[e] civil charges for conversion and/or criminal charges for theft."

89. Piemonte inaccurately classified Scatchell, Sr. as "terminated," not retired.

---

[6] Ordinance No. 2190 - Amending the Melrose Park Municipal Code by Adopting § 2.60.180 and § 2.64.180 Establishing a Mandatory Retirement Age for Police Officers and Firefighters Employed by the Melrose Park.

**90.** This letter was another unprecedented act as no recent retirees were threatened with criminal prosecution or expected to find such property, some of which was almost 10 years old.

**XIII.    Defendants Applied a Different Standard to Scatchell Jr. than other Officers**

**91.** Under the current Melrose Park regime, a culture of disparate treatment and ad hoc policy-making has flourished at the Melrose Park Police Department ("MPPD"). On the one hand, MPPD's Brass trivializes or ignores certain rule violations and even criminal misconduct when favored personnel are involved. On the other hand, other officers have falsified intra-departmental correspondence and created rules after the fact to punish lower-ranking or disfavored personnel.

**92.** Beginning in November 2016, Scatchell Sr. found himself in the latter category after he allegedly took "two adverse positions against the Village of Melrose Park" as explained above.

**93.** Plaintiffs further allege that similarly situated officers have been allowed, to resign quietly, face minimal disciplinary action, or suffer no disciplinary action whatsoever. For example:

    **a)** <u>Stolen Police Car:</u> One police officer left the car keys in a marked police car causing the police car to be stolen; and failed to report the vehicle stolen or enter it into L.E.A.D.S.; eventually, Illinois State Police dispatch notified Melrose Park that one of its police cruisers was traveling at a high rate of speed on an expressway. This officer was not fired.

    **b)** <u>Chief's Son Negligently Fires Duty Weapon in a Bathroom Stall:</u> Another police officer, Chief Pitassi's son, Sam Pitassi Jr. ("Pitassi Jr.") negligently fired his gun while in a bathroom stall during a break from a training session at Skokie Police Department.

    **c)** <u>Chief's Son Rear-Ends Civilian while Driving Squad Car:</u> Later in 2017, Pitassi, Jr. rear-ended a civilian's vehicle with his squad car. A sergeant investigating the accident blamed another driver— even though rear-end collisions are almost always blamed on the striking

vehicle. Pitassi, Sr. "determined" that his son was "negligent in the operation of a squad car," yet Pitassi, Jr. was not immediately tested for drug and alcohol as is policy.

d) <u>Deputy Chief's Nephew Arrested for Disorderly Conduct while on Probation:</u> Castellan's nephew, Giancarlo Castellan, was arrested, while on probation, for disorderly conduct in Oak Brook, accused, while off-duty, of driving his car at a female pedestrian. He listed his home address as a residence in Oak Brook, in violation of the residency requirement.

94. While Defendants claim that their relatives are held to a "higher standard," the opposite is true. Neither Pitassi nor Castellan properly recused themselves from the matters involving their relatives. No formal investigation was launched for any of the above-listed scenarios. The only discipline these officers allegedly received was two forfeited vacation days with the opportunity for reinstatement.

95. There is no standardized disciplinary matrix on which Defendants can rely to ensure that officers are disciplined consistently and equitably. Upon information and belief, Melrose does not analyze complaint data to identify racial, ethnic, gender, or other disparities that may be present. Due at least in part to the absence of such a matrix, discipline is haphazard and unpredictable, and is meted out in a way that does little to deter misconduct.

## XIV. <u>Defendants' Pre-textual Investigation of Scatchell Sr.'s Son as Retaliation</u>

96. On November 13, 2018, approximately 18 days after Defendants received Scatchell Sr.'s EEOC complaint, and in furtherance of their conspiracy to retaliate against Scatchell Sr. for his protected and oppositional conduct, the individual Defendants targeted Scatchell Jr., for an investigation based on an anonymous letter that he was abusing his sick leave.

97. Castellan claimed that an anonymous police officer "slid [a letter] under his office door."

**98.** MPPD is equipped with a state-of-the-art camera system, including cameras that point to Castellan's office. Upon information and belief, Defendants never reviewed any of the surveillance videos to investigate the anonymous letter nor did they preserve the videos.

**99.** This anonymous letter was problematic. It was unsworn, contained no dates, no times, no locations, and no other information that would rise to a "reasonable suspicion" that Scatchell Jr. was abusing his sick leave. More was required.[7]

**100.** Defendants relied on this anonymous letter as probable cause to investigate Scatchell Jr., only to withdraw the only charge mentioning this anonymous letter in the Board proceedings.

**101.** Yet, within hours of receiving this letter, Castellan and Pitassi tasked Caira—the officer that Scatchell Sr. opposed at the pension meeting—with the "full resources of the department" to carry out an unprecedented 219-hour of surveillance of Scatchell Jr. during a one-month span.

### XV.    Defendants' $200,000+ Taxpayer-Sponsored Witch Hunt

**102.** Prior to this investigation, Scatchell Jr. had an unblemished record. Scatchell Jr. was never warned or disciplined.

**103.** After a purported investigation as to each claim, Castellan and Pitassi bypassed any lesser disciplinary events—there no verbal warnings, no written disciplinary warnings, no forfeiture of vacation days, and no suspensions—and quickly referred the charges to the Board of Fire and Police Commission ("BOFPC") for termination. The first time that Scatchell Jr. was on notice that Defendants took issue with his behavior was when he was served with a notice of interrogation.

---

[7]*Sharud Din v. City of Chicago*, 883 F.Supp. 270, 273 (N.D. Ill. 1995); *See Anderson v. Human Rights Com'n*, 314 Ill. App. 3d 35, 42–46, 246 Ill. Dec. 843, 731 N.E.2d 371 (1st Dist. 2000) (documents should not be admitted when the witness testifying about them does not have the personal knowledge to establish a proper foundation).

**104.** Scatchell Jr.'s investigation was unlike any that had been done of any other police officer in the Village's history, that included, but was not limited to:

a) sending *ex parte* communications to Scatchell Jr.'s treating physicians, using factually inaccurate allegations, to "make them aware [their] obligations" pursuant to the Firearm Owners Identification Card Act which provides in relevant part that:

> "If a person is determined to pose a clear and present danger to himself, or to others . . . a clinical psychologist . . . within 24 hours of making the determination, shall notify the Department of Human Services that the person poses a clear and present danger …" 430 ILCS 65/8/1(d).

This action was highly improper, factually inaccurate, and designed for no other reason than to ostracize Scatchell Jr.

b) Deviating from the SOP's and protocol involving Officer Involved Shooting incidents.

c) Forcing Scatchell, Jr. to ride with other officers (often had less seniority than Scatchell Jr.) when he was medically cleared to work. The officers were ordered to observe him and write down anything "weird that he did" during his shift. None of these officers have any kind of medical qualifications to perform medical evaluations.

d) Not adhering to or uniformly applying its sick leave protocol.

e) Improperly disclosing or transmitting significant personal information (e.g. social security number, home address, phone number, and driver's license number) to third parties, including to a convicted felon.

f) Unlawfully obtaining Scatchell, Jr.'s mother's TollPass records to circumvent the TollPass' subpoena process and then using the improperly obtained TollPass records in Scatchell, Jr.'s interrogation.

g) Unlawfully running LEADS and Soundex reports on Scatchell Jr.'s friends and relatives unrelated to the proceedings to build their case against Scatchell, Jr.

**h)** Turning Scatchell Jr's investigation into a criminal investigation.

**i)** Continuing surveillance efforts after the interrogation was over and before Scatchell Jr. was charged by the BOFPC. When Caira continued to survey Scatchell Jr., he had no reason to believe he was still under active surveillance.

**j)** Subjecting him to abuse of process by filing a Petition to Enforce a Medical Subpoena that was only denied based on the MPPD failing to follow proper protocol.

**105.** Additionally, Defendants' investigation and the proceedings that followed violated the Open Meetings Act; failed to consider progressive discipline or mitigating evidence; disproportionately applied the sick leave policy; engaged in in disparate treatment and favoritism towards other employees but not Scatchell Jr.; refused to provide discovery as per MPPD's obligation under SOP 1020; ran afoul of the established policy, CBA requirements, and the Illinois' Uniform Peace Officers' Disciplinary Act; relied on speculation that was contrary to the undisputed evidence; misrepresented and mischaracterized evidence; and investigated and sought Scatchell Jr.'s termination based on ginned-up, trumped-up, trivial bases that were pretextual litigation figments to justify firing him as retaliation.

**106.** As of November 2018, Defendants spent nearly $150,000 of taxpayer money to prosecute John Scatchell Jr. Never before have the Defendants expended such effort and such resources to "investigate" and terminate an officer.

## XVI. <u>Just Cause Standard</u>

**107.** As a full-time police officer covered by the Collective Bargaining Agreement ("CBA"), Scatchell could not be relieved from duty, suspended, discharged, or disciplined in any manner without the Village of Melrose Park having established just cause.

**108.** Specifically, § 5.3 of the CBA covers a police officer's use of sick leave that requires that:

A three-panel Review Board shall oversee the application of the Sick Leave Policy …
provided that the Review Board **shall not inquire into any particular case until the
officer has been on sick leave for at least one (1) month.** (Emphasis added)

109.    The MPPD also follows a progressive discipline approach to discipline.

### XVI. Defendants Terminate Scatchell Sr.'s Son

110.    On December 6, 2018, in complete disregard of Scatchell Jr.'s status as a full-time police

officer, and the express terms of the CBA, the Board issued a final decision and order

terminating Scatchell Jr. from his position of police officer with Defendant Village.

111.    The Board proceeding was a total sham, however, and would never have occurred but-for

the other Defendants' hell-bent determination to punish Plaintiff John Scatchell Sr. for daring

to challenge them in the Lavalais residency matter.

112.    Nothing in the Statement of Charges supports the conclusion that Scatchell Jr.'s "conduct

constitutes some substantial shortcoming which renders his continuance and employment in

some way detrimental to the discipline and efficiency of the public service and something

which the law and sound public opinion recognize as good cause for him to no longer occupy

his position."

113.    In September 2018, Castellan and Pitassi took the opposite stance in their Motion to

Dismiss Petitioner's Amended 224 Petition by asserting that:[8]

> *Nothing in the [anonymous] note claimed that [Scatchell] is a 'bad policeman.'*
>
> *… the alleged statement … does not impute the inability to perform his job; to the
> contrary, it implies conduct wholly unrelated to the Petitioner's job performance. Nor
> does the alleged statement suggest a want of integrity in Petitioner's job duties, nor
> impute a lack of ability in his trade, profession, or business.*

---

[8] On February 15, 2018, Scatchell Jr. filed a Pre-suit Petition for Discovery under Rule 224 to investigate who
unlawfully accessed his mother's TollPass account, who wrote the anonymous letter, and who changed his
vacation date in the computer. ¶ 9.

114.    At all times, father and son Plaintiffs have had a fundamental right to preserve the sanctity and integrity of their family, which they are by their father-son relationship.

115.    At all times, Plaintiff Scatchell Jr. never distanced himself from his father's actions, never denounced his father's actions, and refused to disavow his father's right and lawful actions.

116.    Scatchell Jr. was not an accidental victim of the retaliation. To the contrary, injuring him was the Defendants' intended means of harming Scatchell Sr.

117.    The individual Defendants, because of Scatchell Sr.'s protected conduct, visited further retribution upon, Scatchell Jr., in a way that deprived the son of his fundamental right to preserve the sanctity of the family relationship and for no better reason than that he is John Scatchell Sr.'s son.

118.    The Board's decision to terminate Scatchell Jr. is contrary to the manifest weight of the evidence; clearly erroneous; and/or is void as a matter of law because it was decided by an unlawfully[9] constituted "Personnel Board." Lastly, it does not contain just and sufficient cause for discharge.

119.    Even though Defendants terminated Scatchell Jr., they have continued their retaliatory conduct in the following ways:

  a) Defendants broke Scatchell Jr.'s personal lock on his department locker and removed his personal effects without contacting his counsel to be present when it was opened.

  b) Defendants refuse to pay Scatchell Jr. for his unused vacation and "comp" time. MPPD officers work 2018 for their 2019 vacation and "comp" time.

---

[9] Melrose Park abolished its Board of Fire and Police Commission and replaced it with the Personnel Board. There is a state court case challenging the validity of the Personnel Board that terminated Scatchell Jr. because no Village ordinance recognizes such a Board. *See generally Scatchell v. Melrose Park, et al.*, 18 CH 07685 (J. Meyerson).

**c)** Pitassi notified the Illinois Law Enforcement Training and Standards Board seeking to add Scatchell Jr. to Illinois' police officer misconduct database. This was the first time that Pitassi ever filed such a report, even though other MPPD officers have been terminated. Police departments usually wait until the termination decision is final and appeal rights have been exhausted. Pitassi waited one week. 50 ILCS 705/6.2.

**d)** Defendant Village never sent Scatchell Jr. general notice of his health insurance rights pursuant to COBRA[10] upon hiring OR termination.

**e)** Scatchell Jr. sent multiple messages (prior to the 01/01/19 deadline) inquiring about the specifics of his COBRA coverage only to find out on January 11, 2019 that the Village rescinded his COBRA coverage under the guise of "gross misconduct." Upon information and belief, the Village provided COBRA coverage to other employees it terminated.

**f)** Defendants never sent Scatchell Jr. a termination packet with the notice of rights as required by the Illinois Department of Employment Security within five (5) days of separation, healthcare, pension, or other separation notices.

120. Defendants Serpico, Castellan, Pitassi, and Rogowski did nothing to stop the retaliation as required to do by MPPD or Village policy. Plaintiffs are informed and believe that other third parties were encouraged to act against Plaintiffs. By allowing the retaliation against Plaintiffs to continue unabated Defendants condoned, ratified, encouraged, and agreed to the retaliation.

121. Plaintiffs are also informed and believe that several, if not all of the Defendants and other unknown parties engaged in extensive communications via their personal or Village-issued cell phones and Email accounts in furtherance of their conspiracy.

### COUNT I – 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHTS OF SPEECH AND ASSOCIATION
Plaintiff John Scatchell Sr. v. All Individual Defendants

---

[10] Consolidated Omnibus Budget Reconciliation Act of 1985.

122.    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

123.    The First Amendment to the United States Constitution guarantees the Plaintiffs' rights to speak out on matters of public concern without fear of unjust retaliation.

124.    As described more fully above, Scatchell Sr. engaged in extensive protected speech on matters of public concern, including: publicly opposing race discrimination in the Lavalais matter, advocating for union rights, and opposing questionable pension spending.

125.    Scatchell Sr. had no job purpose for his speech, no self-interest for his speech, and his speech occurred through acts in and out of the line of duty, including as a private citizen in signing the Declaration on behalf of Lavalais.

126.    Scatchell Sr. alleges that Melrose Park has retaliated against him because he exercised his rights under Title VII by signing a Declaration on behalf of Lavalais, voting to arbitrate Lavalais' residency issue, and offering to testify at Lavalais' arbitration.

127.    Scatchell Sr. was retaliated against, harassed, transferred, and constructively demoted for engaging in constitutionally protected speech and expressive conduct.

128.    Scatchell Sr. carried out his job duties competently and professionally, but Defendants penalized him for exercising his First Amendment protected rights.

129.    As a result of Scatchell Sr.'s exercise of protected speech, Defendants Serpico, Director Pitassi, Castellan, and Rogowski, retaliated against in the manner described in the preceding paragraphs.

130.    As a result of Scatchell Jr.'s exercise of protected speech, Defendants Mayor Serpico, Director Pitassi, Castellan, and Rogowski, retaliated against Plaintiff Scatchell Jr. by

subjecting him to an unprecedented investigation and sham disciplinary proceedings before the local "Personnel Board" that resulted in Plaintiff Scatchell Jr.'s albeit void termination.

131.    As a result of the aforementioned deprivation of federal rights, Plaintiff has suffered and will likely continue to suffer injuries.

WHEREFORE, for the foregoing reasons, Plaintiff John Scatchell Sr. requests that this Court enter judgment in his favor and against the individual Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park, Illinois to reinstate John Scatchell Sr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983 CLAIM OF RETALIATION FOR DEPRIVATION OF RIGHTS UNDER § 1981
Both Plaintiffs v. All Individual Defendants

132.    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

133.    Individual Defendants are final policymakers for the Village of Melrose Park, Illinois.

134.    The Individual Defendants created a policy, practice, custom, and took express acts that had the force and effect of official Village policy to retaliate against the Scatchells for their opposition to the administration in the Lavalais situation.

135.    The policy, practice, and custom are evidenced by, *inter alia*, timing and the ongoing onslaught of adverse actions taken against both Scatchells following Scatchell Sr.'s participation with Lavalais, and opposition to the administration's unlawful practices.

136. Scatchell Sr. alleges that Melrose Park's official policy and practice was to retaliate against him and Scatchell Jr. because Scatchell Sr. exercised his rights under Title VII by signing a Declaration on behalf of Lavalais, voting to arbitrate Lavalais' residency issue, and potentially testifying at Lavalais' arbitration.

137. When Scatchell Sr. refused to back down, he was retaliated against as described herein, including through a third-party reprisal, *to wit*, termination of his son, Scatchell Jr.

138. Melrose's differential application of the Rules, considered in totality with the other events, customs, practices represents purposeful retaliation against him.

139. As a proximate result of the unlawful discrimination and/or the fact that Scatchell Sr. made complaints to management about race discrimination in the workplace and opposed acts constituting unlawful retaliation, Defendants personally and directly acted in violation of 42 U.S.C. § 1981 by denying him the full and equal benefit of laws, including in the formation of a contract on his pending promotion to Deputy Chief.

140. Both Plaintiffs have endured substantial financial loss, suffering, humiliation, emotional distress, and other damages in the past and the future.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park to reinstate John Scatchell Sr. and John Scatchell Jr. to their positions and benefits with full make-whole relief, and for all such other relief to which they are entitled, and the Court deems just and proper.

## COUNT III- *MONELL* CLAIM FOR DEPRIVATION OF FOURTEENTH AMENDMENT RIGHT TO BE FREE FROM RETALIATION
### Both Plaintiffs v. Defendant Melrose Park, Illinois

141.    The Plaintiffs, John Scatchell Sr. and John Scatchell Jr., reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

142.    That the retaliation against Plaintiffs was part of systemic express acts by final policymakers for the Village, and by custom, policy, and practice espoused by the Village of Melrose Park and its policymakers in the Police Department to punish officer Scatchell Sr. and officer Scatchell Jr. for taking positions "adverse to the Village" as described throughout this Complaint.

143.    Retaliation against Plaintiffs was devised, approved, ratified, and carried out by individuals with final policymaking authority for the actions taken, including as follows:

a)    As a home rule municipality, Mayor Serpico generally has free reign over promotions, hiring, firing, and general management of Melrose Park.[11]

b)    By authority delegated to him by state law and village ordinance, Director Pitassi is responsible for the general management and control of the police department.

c)    Within the Department, Pitassi has delegated certain policymaking authority to his Deputy Chiefs Castellan and Rogowski including to take disciplinary actions and to issue instructions to department employees in the line of their duties.

---

[11] The court may take judicial notice of the disposition in *Trombetta v. Board of Education*, 2003 WL 23685091 (Trombetta served as the campaign manager for his cousin who unsuccessfully ran against Serpico for Mayor of Melrose in 2001. Serpico retaliated against Trombetta by terminating his contract and opening up an investigation against his five (5) year old niece. The jury awarded Trombetta $1 million in punitive damages against Serpico).

    **d)** Director Pitassi was aware of the retaliation against Plaintiff, described above, and knowingly allowed it to continue unabated thereby encouraging, fostering, ratifying, and causing the retaliation.

**144.** The misconduct described in this Count was the result of Defendant Village of Melrose Park's deliberate indifference to the policies, and widespread practices described more fully above and in that:

    **a)** Municipal policymakers are aware of, condone and facilitate by their inaction, a "code of silence" in the MPPD, by which officers understand that any opposition to the administration amounts to a betrayal.

    **b)** The Municipal policymakers are aware of, condone and facilitate the enforcement of the "code of silence" within the MPPD through the retaliation against any officer that takes any actions considered to be "adverse" to it.

    **c)** As a matter of both policy and practice, Melrose facilitated the very type of misconduct at issue here by allowing it to continue as a matter of practice within the MPPD, thereby leading officers to believe that the code of silence will be enforced throughout the Department and, in that way, directly encouraging future retaliation while ensuring compliance of its conduct.

    **d)** As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the MPPD who have dared to speak out about the misconduct of others have experienced retaliation a manner similar to that alleged by Plaintiff.

**145.** That as a result of the express acts of policymakers, and through employing a custom, policy and practice espoused by Melrose Park to retaliate against plaintiff and other officers who complained about Melrose Park's unlawful employment practices, Plaintiffs suffered and

will likely continue to suffer harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park, Illinois to reinstate Plaintiffs to their position and benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

### COUNT IV –42 U.S.C. § 1983 *CONSPIRACY* TO DEPRIVE OF FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHT TO BE FREE FROM RETALIATION
Both Plaintiffs v. All Individual Defendants

**146.**    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

**147.**    On information and belief, defendants Serpico, Pitassi, Castellan, Rogowski, Rodriguez, Caira, and other unknown employees and agents of Melrose agreed or reached a mutual understanding to commit acts in retaliation against Scatchell Sr. for his perceived opposition.

**148.**    In furtherance of that agreement, Defendants and other unknown parties conspired to retaliate and embarrass Scatchell Sr. and then to target Scatchell Jr. for termination.

**149.**    As part of this plan, Defendants engaged in the following acts:

  **a)**  Failing to locate, to identify, or to interview witnesses or physical evidence when Scatchell Sr. called the police;

  **b)**  Ignoring contrary evidence and failing to correct or report false information;

  **c)**  Withholding evidence or public records pursuant to FOIA;

  **d)**  Deleting or failing to preserve exculpatory communications and video evidence; and

**e)** Accusing both Plaintiffs of committing various crimes.

150. The object of the conspiracy was to terminate Lavalais from the MPPD and then via additional conspiracy, to terminate and harass anyone opposing such termination, which included both Scatchell Plaintiffs.

151. Plaintiffs were deprived of their Constitutional rights in the manner described in the preceding paragraphs, including the Fourteenth Amendment's right to be free from retaliation.

152. That in furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors under color of law.

153. That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

154. As a result of the aforementioned deprivation of federal rights, Plaintiffs have suffered and will likely continue to suffer injuries including but not limited to emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park, Illinois to reinstate Plaintiffs to their position and benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

### COUNT V – TITLE VII VIOLATION, 42 U.S.C. § 2000e(3)(a)
### BASED ON RETALIATION
Plaintiff John Scatchell Sr. v. Village of Melrose Park, Illinois

155. The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

156.   At all times relevant, Defendant Village of Melrose Park, Illinois has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.*

157.   At all times relevant, Plaintiff John Scatchell Sr. has been an employee within the meaning of Title VII and an employee of the Village of Melrose Park, Illinois.

158.   At all times relevant, Plaintiff John Scatchell Sr. engaged in conduct protected by Title VII, including, but not limited to, opposing unlawful and discriminatory practices toward the Village of Melrose Park, Illinois' only African-American police sergeant, *to wit*, Kyll Lavalais.

159.   Plaintiff John Scatchell Sr. has suffered a severe and/or pervasive hostile work environment by his actions in support of the sole African-American police sergeant as stated in the other paragraphs and Counts of this Complaint.

160.   In addition, Defendant Village of Melrose Park, Illinois –by and through its agents, representatives, and employees, *to wit*, at least the other Individual Defendants -- not content with making a living hell of Plaintiff John Scatchell Sr.'s conditions of employment, went after his son, John Scatchell Jr., with ginned-up and false charges before the Melrose Park Board of Fire and Police Commissioners that had been recently abolished and then illegally-constituted again in contravention of its empowering law that is the subject of a different state court action.

161.   The foregoing actions against John Scatchell Sr. constitute a severe and pervasive hostile work environment, all that started during his employment with the Village and such actions were taken by the Village and its agents against Scatchell Sr., for his having opposed unlawful and discriminatory practices concerning Kyll Lavalais.

162.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff John Scatchell Sr. has suffered economic and non-economic damages, including lost pay, benefits, promotional opportunities, reputational damage, garden variety emotional distress, and

general, special, and consequential damages, all as a result of Defendant Village of Melrose Park's unlawful actions.

WHEREFORE, for the foregoing reasons, Plaintiff John Scatchell Sr. requests that this Court enter judgment in his favor and against Defendant Village of Melrose Park, Illinois in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, and order Melrose Park to reinstate John Scatchell Sr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

## COUNT VI – 42 U.S.C. § 1983 FOURTEENTH AMENDMENT EQUAL PROTECTION DEPRIVATION BASED ON RETALIATION
Plaintiff John Scatchell Sr. v. All Individual Defendants

**163.**   The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

**164.**   At all times relevant, the Individual Defendants have acted under color of law and their office, to include taking the actions against Plaintiffs raised herein in the purported scope of their employment with the Defendant Melrose Park.

**165.**   At all times relevant, Plaintiff John Scatchell Sr. engaged in conduct protected by the 14th Amendment in opposing racial discrimination, and by Title VII, including, but not limited to, opposing unlawful and discriminatory practices toward the Village of Melrose Park, Illinois' only African-American police sergeant, *to wit*, Kyll Lavalais.

**166.**   John Scatchell Sr. has suffered a severe and/or pervasive hostile work environment by his actions in support of the sole African-American police sergeant as stated in the other paragraphs and Counts of this Complaint.

33

167.    In addition, the individual Defendants, not content with making a living hell of Plaintiff John Scatchell Sr.'s conditions of employment, they then went after his son, John Scatchell Jr., with ginned-up and false charges before the Melrose Park Board of Fire and Police Commissioners ("BOFPC") that had been recently abolished and then illegally-constituted, again, in contravention of its empowering law that is the subject of a different state court action.

168.    The foregoing actions against John Scatchell Sr. constitute a severe and pervasive hostile work environment and material adverse actions, all that started during his employment with the Village and such actions were taken by the Village and its agents against Scatchell Sr., for his having engaged in protected conduct and also having opposed unlawful and discriminatory practices with respect to Kyll Lavalais and speaking out against potential pension abuse.

169.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff John Scatchell Sr. has suffered economic and non-economic damages, including lost pay, benefits, promotional opportunities, reputational damage, garden variety emotional distress, and general, special, and consequential damages, all as a result of Defendant Village of Melrose Park's unlawful actions.

        WHEREFORE, for the foregoing reasons, Plaintiff John Scatchell Sr. requests that this Court enter judgment in his favor and against Defendant Village of Melrose Park, Illinois in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park, Illinois to reinstate John Scatchell Sr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

**COUNT VII – 42 U.S.C. § 1983 FOURTEENTH AMENDMENT EQUAL PROTECTION
DEPRIVATION BASED ON RETALIATION**
Plaintiff John Scatchell Jr. v. All Individual Defendants

170.    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if

fully set forth herein.

171.    The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to

be free from retaliation for protected activity, including the right to be free from third-party

reprisals for his father's protected conduct. *Cf. Thompson v. North American Stainless, LP*,

131 S. Ct. 863 (2011); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).

172.    As described more fully above, by the direct and personal actions of the individual

Defendants under color of law, Plaintiff Scatchell Jr. was subjected to an extensive and

unprecedented investigation and termination from the police force because of his familial

relationship with his father, John Scatchell Sr., who engaged in protected speech and Title VII

conduct as described above.

173.    This pattern is intentional and willful and exhibits a conscious disregard of or deliberate

indifference to the rights of John Scatchell Jr.

174.    This pattern is undertaken according to a policy, custom, or practice that deprives persons

of their rights under the 14th Amendment in violation of 42 U.S.C. § 1983.

175.    Plaintiff John Scatchell Jr. suffered retaliation by the individual Defendants because his

father exercised rights under Title VII and the First and Fourteenth Amendments by signing a

Declaration on behalf of Lavalais, voting to arbitrate Lavalais' residency issue, offering to

testify at Lavalais' arbitration, filing an EEOC Charge, and opposing acts of race

discrimination relating to Lavalais.

176.    As a result of his Scatchell Jr.'s familial relationship with his father, Defendants Serpico, Pitassi, Castellan, Rogowski, and other unknown MPPD officers and employees retaliated against him in the manner described in the preceding paragraphs to deter other reasonable employees from engaging in other protected activity or opposing unlawful activity.

177.    Under color of law, the individual Defendants Serpico, Pitassi, Castellan, Rogowski, individually, directly, and personally, oversaw an investigation into Scatchell Jr.

178.    Defendants Serpico, Pitassi, Castellan, and Rogowski at all times, under color of law and through their state-based actions, investigated, surveilled, and specially attended to John Scatchell Jr. in unprecedented ways outlined hereinbefore, during, and throughout his investigation and ultimate termination before the BOFPC.

179.    As a result of Scatchell Sr.'s exercise of protected activity, Defendants Serpico, Pitassi, Castellan, and Rogowski, retaliated against Plaintiff Scatchell Jr. by subjecting him to an unprecedented investigation and sham disciplinary proceedings before the BOFPC that resulted in Plaintiff Scatchell Jr.'s albeit void termination.

180.    Such actions by the Defendants under the color of law, deprived Plaintiff Scatchell Jr. of his right to be free from retaliation under the Fourteenth Amendment.

181.    As a result of the aforementioned deprivation, Plaintiff has suffered monumental injuries, *to wit*, subjection to a sham and unprecedented police surveillance and investigation, subjection to proceedings before the abolished "Board of Fire and Police Commission," and termination from his job as a police officer and corresponding loss of pay, benefits, reputational damage, and garden variety of emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff John Scatchell Jr. requests that this Court enter judgment in his favor and against Defendant Village of Melrose Park, Illinois in an

amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order the Village of Melrose Park to reinstate John Scatchell Jr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT VIII – INVASION OF PRIVACY AGAINST VILLAGE OF MELROSE PARK, ILLINOIS
Scatchell Jr. v. All Defendants

182.    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

183.    The 4th Amendment of the United States Constitution (applicable to the states via the 14th Amendment) guarantees the right to be free from unreasonable violations of privacy. John Scatchell Jr. enjoys the constitutional right to privacy, safety, and security.

184.    At all relevant times, supervisory agents and employees of the Village, acting under color of law, improperly released and distributed significant personal, private, and protected information pertaining to Scatchell Jr.

185.    At all times relevant hereto, Defendants had a duty to train and supervise their employees to comply with Illinois law including but not limited to, the Illinois Identity Protection Act (IIPA), 5 ILCS 179/1, et seq. and the Social Security Number and Identity Privacy and the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

186.    Defendants' actions were carried out by sufficiently high-ranking officials of the Village who either possessed or had been delegated final policymaking authority by the Village with regard to all internal investigations within the Police Department so as to cause these actions to constitute policy.

187.    At all relevant times, Defendant Village empowered its supervisory personnel, including but not limited to, Pitassi, Rogowski, Castellan, and Serpico, to establish a custom, pattern and practice of repeated disclosure of highly sensitive, prohibited information in preparation of discovery requests and failed to adequately train and supervise employees' activities in a manner that would eliminate or prevent such blatant privacy violations against Scatchell Jr.

188.    By disclosing Scatchell Jr.'s personal information, Defendants created, or substantially created an intrusion upon his constitutional right to privacy, safety, and security.

189.    At all relevant times, Defendants knew or should have known that the conduct described herein was a violation of 42 U.S.C. §1983 and Scatchell Jr.'s 4th and/or 14th Amendment right to be free from unreasonable violations of privacy.

190.    All of the actions taken against Scatchell Jr. by the Defendants including the release of prohibited information, and the approving and condoning of these actions by the Village, was done by Defendants while acting under color of law and in their official capacities, and had the effect of depriving Scatchell Jr. of rights secured by the Constitution and law of the United States, specifically the 4th and 14th Amendments, in violation of 42 U.S.C. §1983.

WHEREFORE, for the foregoing reasons, Plaintiff John Scatchell Jr. requests that this Court enter judgment in his favor and against Defendant Village of Melrose Park in an amount to be proved at trial and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT IX – INDEMNIFICATION AGAINST VILLAGE OF MELROSE PARK, ILLINOIS
Both Plaintiffs v. Defendant Village of Melrose Park, Illinois

191.    The Plaintiffs reallege all other paragraphs of this Complaint and incorporate them as if fully set forth herein.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendants and order Defendant Village of Melrose Park, Illinois to indemnify the other Defendants.

## JURY TRIAL DEMAND

Plaintiffs hereby requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, JOHN SCATCHELL, SR., and JOHN SCATCHELL, JR., pray that this Honorable Court:

**A.** Conduct a mediated settlement conference or to refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

**B.** Enter judgment in the Plaintiffs' favor and against Defendants;

**C.** Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices;

**D.** Award John Scatchell Sr. for his past and future loss of wages and benefits, plus interest;

**E.** Award John Scatchell Jr. for his past and future loss of wages and benefits, plus interest;

**F.** Order Defendants to reinstate Scatchell Jr. to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

**G.** Award the Plaintiffs actual damages suffered to the extent permissible by law to compensate the Plaintiffs for injuries and losses caused by Defendants' conduct;

**H.** Award the Plaintiffs compensatory damages to the extent permissible by law to compensate the Plaintiffs for injuries and losses caused by Defendants' conduct;

**I.** Award Plaintiffs punitive and/or exemplary damages to the extent permissible by law against the individual Defendants only;

**J.** Award the Plaintiffs prejudgment interest on these damages;

**K.** Award punitive damages against the individual Defendants only, after notice and a hearing if discovery warrants same;

**L.** Award John Scatchell Jr. $110 a day for the COBRA violations (29 U.S.C. § 1132(c));

**M.** Award the Plaintiffs reasonable attorneys' fees, costs, and litigation expenses; and,

**N.** Grant such further relief as the Court deems necessary and proper under the circumstances.

Respectfully submitted,

LAW OFFICES OF GIANNA SCATCHELL

By: /s/ Gianna R. Scatchell

Gianna R. Scatchell

Gianna R. Scatchell ARDC No. 6300771
LAW OFFICES OF GIANNA SCATCHELL
Attorney for Plaintiffs
360 W. Hubbard Street, 1404
Chicago, Illinois 60654
(312) 248-3303
gia@lawfirm.gs

Respectfully submitted,

By: /s/ Cass T. Casper

Cass T. Casper

Cass T. Casper, ARDC No. 6303022
TALON LAW, LLC
Attorney for Plaintiffs
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
(312) 351-2478
ctc@talonlaw.com