# AFFIDAVIT OF SAM PITASSI

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN SCATCHELL, | ) |
| | ) |
| Plaintiff, | ) Case No. 18-cv-3989 |
| | ) |
| vs. | ) |
| | ) Honorable John Kness |
| VILLAGE OF MELROSE PARK, | ) |
| RONALD M SERPICO, SAM C. PITASSI, | ) |
| MICHAEL CASTELLAN, and | ) |
| STEVE ROGOWSKI | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT

I, the affiant, SAM PITASSI, having been first duly sworn upon oath, do state and depose that I have personal knowledge of all facts which follow and, if called, I could competently testify to the following.

1. I am employed by the Village of Melrose Park as the Director of Police.

2. I did not attend any Fraternal Order of Police ("FOP") meetings in the Fall of 2016.

3. I have no knowledge of any statements made by John Scatchell at any time, including at any FOP meetings, relating to the Kyll Lavalais residency order, grievance, or grievance arbitration.

4. I have no knowledge of any statements made by John Scatchell, at any time, about or opposing race discrimination in the enforcement of the Village's ordinance mandating that police officers establish residency in the Village limits.

5. John Scatchell has never expressed any personal viewpoint or opinion to me about or opposing race discrimination in the enforcement of the Village's ordinance mandating that police officers establish residency in the Village limits, or about the Kyll Lavalais residency order, grievance, or grievance arbitration.

6. I did not know about Scatchell's January 5, 2017 or March 3, 2017 declaration or affidavit until I attended his deposition in 2019.

7. I did not attend the Melrose Park Pension Board meeting on April 17, 2017.

1

8. I do not recall speaking with John Scatchell about any statements he made at the Melrose Park Pension Board meeting about the transfer of Tony Caira's pension.

9. In restructuring the patrol shifts in 2017, I wanted to eliminate having two lieutenants on a patrol shift and decided to assign one lieutenant and one sergeant to each patrol shift so there would be a clear chain of command.

10. Prior to May 1, 2017, there was no lieutenant on the day shift because Lt. DiMaio was on sick leave since early January of 2017, and Sergeant Maiello was in charge of that shift in his absence.

11. Maiello was promoted to lieutenant on the day shift. As part of the restructuring plan, therefore, I assigned Lt. DiMaio to the station supervisor position on that shift because I wanted to eliminate the assignment of two lieutenants directly in charge of patrol. Since there were two lieutenants on the afternoon shift - Lt. Urso and Lt. Scatchell – I decided to assign Scatchell to the station supervisor position on that shift because Urso had seniority as a lieutenant over Scatchell. I also assigned DiMaio to the day station supervisor position and Scatchell to the evening station supervisor position because I believed that Scatchell would prefer the later shift.

12. Prior to 2017, other lieutenants had served as station supervisors including Donald Tinucci and Chuck Rinella but, through attrition, there were none in that position as of early 2017.

13. On November 13, 2017, Deputy Chief Castellan told me that he had received an anonymous note reporting that John A. Scatchell ("Jr.") was abusing sick leave by going hunting every day.

14. I directed Deputy Chief Castellan to have Officer Tony Caira look into the note.

15. At that time, I did not know that Plaintiff John Scatchell Sr. had filed an EEOC Charge or Amended EEOC Charge.

16. The arbitration hearing related to the denial of the grievance submitted by Kyll Lavalais challenging the order that he establish residency in the Village per Village ordinance was cancelled and never went forward because the Village reached a settlement with Lavalais.

17. Lt. Dino DiMaio never complained or reported any issues or problems with the computer in the station supervisor's office, logging onto the computer, or accessing any programs or systems on or using the computer.

18. Melrose Park Police Department General Order 1014 prohibited the abuse of sick leave by Melrose police officers.

19. I am not aware of any Melrose Park police officers whose misconduct was similar to the misconduct found against John A. Scatchell ("Jr.") by the Board of Fire and Police Commissioners ("BOFPC") which resulted in a dismissal or termination decision.

20. The only instance, other than Scatchell Jr., that I recall relating to known sick leave abuse by a Melrose police officer during my tenure as Chief of Police or Director of Police, was Officer Phil Negron. In 2013, Plaintiff John Scatchell ("Scatchell Sr.") had recommended a three-day suspension for Negron because he (Negron) had worked as a security officer at a local school on one occasion while he was on sick leave from his employment with Melrose Park. At my direction and delegation, Deputy Chief Castellan investigated the matter. After the investigation was concluded, Castellan filed charges against Negron with the BOFPC for engaging in secondary employment while on medical leave. He was also charged with refusing to obey a direct order to identify other police officers who he (Negron) claimed had abused sick leave, and a separate violation for not following Department Procedure by writing a "C-ticket" for a non-valid driver. There was no suggestion that Negron failed to report contact with or provided false information to another law enforcement officer or violated State law by allowing a convicted felon to use a firearm. Nevertheless, charges were issued against Negron with the BOFPC seeking his discharge, just as was done with Scatchell Jr., but the BOFPC decided that a thirty-day suspension was an appropriate level of discipline for Negron. Moreover, even though termination charges were filed against both Negron and Scatchell Jr., I consider Scatchell Jr.'s misconduct to have been much worse than Negron's because Scatchell Jr.'s misconduct demonstrated a complete disrespect for the law and for another law enforcement officer.

FURTHER AFFIANT SAYETH NOT.

SAM PITASSI

SUBSCRIBED and SWORN to before

me this 28 day of December, 2020.

NOTARY PUBLIC

OFFICIAL SEAL
CHRISTINE MARIE PIEMONTE
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 03/23/2023

3