IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN SCATCHELL, SR., | ) | |
|     *Plaintiff*, | ) | Case No. 18 CV 3989 |
| v. | ) | |
| | ) | Hon. J. John F. Kness |
| VILLAGE OF MELROSE PARK, *et al.*, | ) | Mag. J. Jeffrey Cummings |
|     *Defendants.* | ) | |

## DEFENDANT RONALD M. SERPICO'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

NOW COMES Defendant Mayor RONALD M. SERPICO ("Mayor Serpico"), by and through his attorney, K. Austin Zimmer, of Del Galdo Law Group, LLC., and for his Memorandum of Law in Support of Summary Judgment, states as follows:

### Introduction

Plaintiff, JOHN SCATCHELL, SR. ("Scatchell Sr.") is a former Melrose Park police officer who retired in 2018 after a 30-year career with the Village of Melrose Park ("Village"). This case, however, is about Scatchell Sr.'s claims that advocacy by the Village's police union against enforcement of a residency ordinance (against a fellow officer, Kyll Lavalais ("Lavalais")) was met with retaliation against him in 2016 and thereafter.

Via an initial complaint filed in June 2018 and a presently active First Amended Complaint, Scatchell Sr. contends that he was ultimately pushed out of the Melrose Park Police Department ("MPPD"), amounting to: a § 1983 First Amendment claim (Count I); a § 1983 retaliation claim (Count II); a *Monell* claim (Count III); a § 1983 conspiracy claim (Count IV); a Title VII retaliation claim (Count V); and, an indemnification claim (Count VI). Of these, Counts I, II and IV incorporate Mayor Serpico as a defendant.

But while Scatchell Sr. offers an expansive tale of supposed double-standards and rubber-stamping of mayoral leadership, what he does not offer is any actual connection between Mayor Serpico and a coordinated effort to punish Scatchell Sr. for protected speech or association. Instead,

the evidentiary record lacks even evidence of protected speech, with Scatchell Sr. admitting that he remained neutral on issues concerning Lavalais. Moreover, where there is no underlying violation, there can be no conspiracy.

The record here shows that Scatchell Sr. never received any discipline or sustained any loss of rank, pay or benefits. And there is no indication that Mayor Serpico had any knowledge whatsoever about the Lavalais grievance at the heart of Scatchell Sr.'s Complaint when deciding on promotion opportunities Scatchell Sr. desired. Because the result is that Scatchell Sr. does not meet his burden to advance a legitimate dispute in need of a fact-finder's input, Mayor Serpico moves for summary judgement.

There is no question of fact that Mayor Serpico did not infringe on Scatchell Sr.'s First Amendment rights, no question that Mayor Serpico did not retaliate against Scatchell Sr., and no question that Mayor Serpico did not conspire with others to accomplish the same. Mayor Serpico respectfully requests judgment in his favor and dismissal of all claims pled against him, with prejudice.

**Standard**

In ruling on a motion for summary judgment, a district court has one task: "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Rather, the nonmovant "must present definite, competent evidence in rebuttal" and such evidence must sufficiently show each essential element on which he bears the burden at trial. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004); *Kampier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a); *Celotex*, at 322-23.

**Argument**

As a preliminary matter and in the interest of brevity, Mayor Serpico adopts the arguments of co-defendants to the extent relevant, including the arguments of the Village to the extent he is sued in his official rather than his personal capacity or alleged to be a final policymaker. Notwithstanding, Mayor Serpico argues further:

A. <u>As a predicate matter, Mayor Serpico had no relevant knowledge or involvement</u>.

    i. *Decisions on the command structure of the MPPD were not influenced by Scatchell Sr..*

As introduced above and highlighted in Defendants' Joint Statement of Facts ("JSOF"), Scatchell Sr.'s claims herein predominantly focus on his support of a grievance by his fellow officer, Lavalais, and the alleged reaction of Village officials thereafter. While Scatchell Sr. lobs a laundry list of other, more generalized accusations (<u>see</u> Sec. B(iii) below), critical to his case is the timing of the Lavalais grievance in 2016 followed by the tabling of his candidacy for promotion to Deputy Chief.

A bit of background is helpful, though, because the record shows that as a subordinate officer, Scatchell Sr. had no influence on command structure decisions in the first place, at most having the capacity as a union officer to organize opposition to the same. In 2016, for example, Scatchell Sr. was the President of the Village's Fraternal Order of Police ("FOP"), which acted as its officers' bargaining unit. JSOF ¶ 11. On September 1, 2016, Police Chief Sam Pitassi ("Chief Pitassi") and Deputy Chief Michael Castellan ("Deputy Chief Castellan") sent a written order to Lavalais regarding non-compliance with the Village's residency requirement. JSOF ¶ 17. Lavalais filed a grievance, which was denied. JSOF ¶ 19. Lavalais asked the FOP to file for arbitration. JSOF ¶ 20. The FOP met – without individual defendants in this case present – and its attorney then

advocated on Lavalais' behalf. JSOF ¶¶ 28, 30, 33. But Scatchell Sr. remained neutral and did not make any statement for or against Lavalais at FOP meetings. JSOF ¶ 25.

Mayor Serpico was unaware that Scatchell Sr.'s daughter represented the FOP in 2016. JSOF ¶ 29. She wrote an e-mail to Village counsel on November 10, 2016 demanding the order to Lavalais be rescinded. JSOF ¶ 33. Scatchell Sr. was not copied on that email. *Ibid.* He did not directly speak to any individual defendant in this case about the Lavalais' grievance. JSOF ¶ 31. Mayor Serpico did not even remember receiving it, nor speaking with any party to this case about it. JSOF ¶ 26. On January 5, 2017, Scatchell Sr. signed a declaration as FOP President, concerning the FOP's position on the Lavalais' grievance. JSOF ¶ 40. After losing re-election as FOP President, he signed another declaration in March 2017. JSOF ¶ 42. But no individual defendant in this case, including Mayor Serpico, was aware of Scatchell Sr.'s declarations until this case. JSOF ¶ 44. His personal opinion, in other words, was simply never expressed at any relevant point.

Meanwhile, in November 2016, the Village Board considered the promotion of Scatchell Sr. to deputy chief, but tabled it and ultimately promoted Deputy Chief Rogowski. JSOF ¶¶ 46-57. Deputy Chief Rogowski had been in the lieutenant's position longer, and Mayor Serpico did not expect him to retire because he did not have 30 years of overall service – whereas Scatchell Sr. had spoken with Mayor Serpico about retirement previously. JSOF ¶¶ 51, 59-60. Knowing that he was at least under consideration, Scatchell Sr. drew the conclusion that Mayor Serpico intervened to advance Deputy Chief Rogowski's promotion as a direct response to the Lavalais' dispute – but Scatchell Sr. offers no evidence that Mayor Serpico had any idea Scatchell Sr. was at all involved beyond his obligations as a union officer, nor that Mayor Serpico took developments in the Lavalais' dispute into account when deciding on who to nominate for Board approval. To the contrary, Mayor Serpico testified that he believed Deputy Chief Rogowski would be a good candidate for the position based on intelligence and experience. JSOF ¶¶ 58, 60. And regardless, Mayor Serpico did

not have the ability or authority to install Deputy Chief Rogowski unilaterally, but rather submitted his name for the approval of the Village Board. JSOF ¶ 57; *Melrose Park Code of Ordinances ("Code")* *2.60.020.*

Other Scatchell Sr. accusations require similar leaps. He points to opposition at a pension board meeting to another officer's lateral transfer, but again omits any indication that Mayor Serpico had either knowledge about that occurrence or opportunity to use it as motive in any supervision of Scatchell Sr.'s employment. To the contrary, Mayor Serpico did not attend any FOP meetings. JSOF ¶ 28. He cites the handling of various investigations as evidence of his alleged diminished status, and points to Chief Pitassi and Deputy Chief Castellan's moves to restructure the department in January 2017 – but once more has nothing to indicate any involvement by Mayor Serpico. JSOF ¶¶ 67, 71.

The result is a pairing of events without any actual link. This, as further argued below, is a threshold problem for Scatchell Sr. in analysis of his First Amendment claim.

 B. <u>Mayor Serpico is entitled to summary judgment on Scatchell Sr.'s First Amendment claim</u>.

  i. *Scatchell Sr. did not engage in constitutionally protected union speech.*

A § 1983 claim of First Amendment retaliation involving a public employee typically requires the following analysis: First, the court must determine whether the employee's speech was Constitutionally-protected. Second, the plaintiff must establish that the speech was a motivating factor in the retaliatory action. Third, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's speech. *Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011); <u>see also</u> *Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir. 2004). Where a defendant knows of a plaintiff's speech yet says adverse action was taken against a plaintiff for allowable reasons, "[i]n other words, the plaintiff bears the burden of proving 'but for' causation" *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011). But "[a]llegedly protected speech cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected speech."

*Andrekus v. Bd. of Educ.*, 2004 U.S. Dist. LEXIS 19388, at *14 (N.D. Ill. Sept. 27, 2004). Moreover, if this Court finds that Scatchell Sr. did not engage in protected speech, then he cannot prevail. See *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

Here, there is no question that advocacy on behalf of other officers, including via participation or leadership in the FOP, would be protected speech. But it is far less clear that Scatchell Sr. was active in that capacity during the relevant time period. He was silent at FOP meetings, and even signed his declaration for Lavalais' as indicative of the FOP's position as a whole rather than as his personal opinion. That is a far cry from showing that his own views were made known on a topic of public concern to enable any retaliation based thereon. To establish protected speech, a public employee must speak out on a topic related to "political, social, or other concern to the community." *Olendzki*, 765 F.3d at 748 (internal citations omitted). This is determined by the content, form and context of the statement. *Id.* The relevant inquiry is whether the speaker intended to bring a wrongdoing to light. *Kubiak v. City of Chicago*, 810 F.3d 476, 483 (7th Cir. 2016).

But communication as a union official does not automatically warrant First Amendment protection, nor can subject matter alone confirm a checklisted status. See, e.g. *Nagle v. Vill. of Calumet City*, 554 F.3d 1106, 1123 (7th Cir. 2009); *Olendzki*, at 747. Unexpressed viewpoints or unuttered thoughts will not suffice. *Wernsing v. Thompson*, 423 F.3d 732, 752 (7th Cir. 2005). Here, where a recipient of Scatchell Sr.'s declaration could have understood it to be performative rather than personal, especially in the absence of any public statements in support of Lavalais' at any other time, it cannot qualify, standing alone, as constitutionally protected speech. In fact, the declaration too contains no advocacy statement and merely confirms that the FOP was not made aware of a consent decree during collective bargaining. And Scatchell Sr.'s erstwhile silence – confirmed in FOP meeting minutes – is similarly unable to clear the minimal hurdle of actual self-expression. See *Doe v. City of Lafayette*, 377 F.3d 757, 763 (7th Cir. 2004).

   *ii.*  *Scatchell Sr. suffered no adverse employment action.*

  Regardless, there is no indication that Scatchell Sr.'s tenure as FOP President had anything to do with any Village action which followed, nor that Village actions such as the promotion of Deputy Chief Rogowski would not have occurred if Scatchell Sr. was not a supporter of Lavalais or in some way constituted a harm to Scatchell Sr. The Lavalais grievance simply was not on Mayor Serpico's radar in late 2016 and had nothing to do with any nomination for promotion made or acted upon by the Village.

  Mayor Serpico testified that he had never discussed any such issue with Scatchell Sr. or taken any intervening role in micromanaging the Village's police department. JSOF ¶¶ 27, 71. Scatchell Sr. has produced no evidence to the contrary. His own son even admits never hearing that Scatchell Sr. ever had any such conversation with the Mayor. JSOF ¶ 187. And Scatchell Sr. retired on his own, without ever being discharged or disciplined in any way. JSOF ¶¶ 1, 115-116, 126, 148, 150. Far from a castoff punished into silence, Scatchell Sr. left with a lifetime pension of $80,000 and annual raises thereto. JSOF ¶ 150. He was paid all accrued benefits and left with the rank of lieutenant. JSOF ¶¶ 148-149.

  That leaves no room for Scatchell Sr. to claim he was adversely impacted, and thus no way to satisfy the second element of his First Amendment claim.

   *iii.*  *Scatchell Sr. also lacks causation evidence, focusing instead on immaterial matter.*

  But lest there be any doubt about the insufficiency of Scatchell Sr.'s claim, he also lacks for evidence demonstration any causal link between the aforesaid non-existent adverse employment action and his non-existent protected speech – attempting instead to bridge this gap with a mosaic of tangential grievance. Thus, while the Court need not focus extensively on tangential subjects, it is worth noting that Scatchell Sr.'s Complaint in part appears to take this scattershot approach by design, hoping that the sheer variety of grievances raised can muddy and confuse the issues. See also

*Hardy v. Hous. Auth.*, 2004 U.S. Dist. LEXIS 19435 at *27 (N.D. Ill. Sept. 22, 2002) (general and vague criticisms may suggest a personal rather than reformative motive on the part of a speaker).

Without limitation, Scatchell Sr.'s Complaint discusses: Officer Lavalais's race in relation to the department demographics overall as an implied motive in enforcing the Village's residency requirement (*FAC* ¶ 15); ten (10) years-worth of prior Village Board voting history (*FAC* ¶ 34); communications between his attorney and the Village attorney (*FAC* ¶ 38); an explosion near Scatchell Sr.'s house (*FAC* ¶¶ 52-57); Scatchell Sr.'s transfer to a different shift and physical office (*FAC* ¶¶ 64-67); a citizen complaint against Scatchell Sr. regarding a traffic stop (*FAC* ¶¶ 75-80); investigation of Scatchell Sr.'s son (also then-employed as a Village police officer) for use of sick leave (*FAC* ¶ 89); and, alleged differential treatment of a litany of other officers for conduct ranging from alleged moonlighting at a marijuana dispensary to alleged improper writing of parking tickets (See *FAC* ¶¶ 108-139, e.g. ¶¶ 121, 127(g)).

But while such a wide-ranging criticism of the MPPD leaves little doubt about Scatchell Sr.'s personal impression of his former employer, it also does little to address whether Mayor Serpico took any action that was connected to retaliation against Scatchell Sr. or repression of protected activity. Cf. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922-924 (7th Cir. 1994) (the purpose of summary judgment proceedings is to identify specific facts that establish a genuine issue for trial and facilitate the task of deciding whether a trial is indeed necessary). District courts are not new to exercising their oversight to exclude impertinent and confusing matter that would require a trial-within-a-trial, where it is merely collateral to the key issues at hand. See *Filar v. Chicago School Reford Bd. of Trustees*, 375 Fed.Appx. 607, 610 (7th Cir. 2010). On review of summary judgment, the Court is similarly capable of observing that surplusage such as, for example, the alleged insufficient discipline of two (2) unnamed officers for a golf cart heist at an unspecified date and time – raised solely for

the would-be purpose of comparison with discipline imposed on Scatchell Sr.'s son – is not germane to analysis of purported infringement of Scatchell Sr.'s First Amendment rights. Cf. *FAC* ¶ 127(g).

For Scatchell Sr. to state a First Amendment claim and attendant retaliation and conspiracy claims against Mayor Serpico, a finger pointed at other functions of the MPPD will not suffice. As discussed above, he must instead show that his protected activity was a motivating factor in a retaliatory action taken against him by Mayor Serpico in coordination with others that would not have occurred but for his activity. Yet, again, beyond merely having no protected speech to point to, Scatchell Sr. also has no deprivation to point to: He retired with full benefits and an annual pension and never faced any discipline at all, after using accrued leave for the last nine months of his employment. JSOF ¶¶ 148-149. Cf. *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995) (materially adverse consequences required) and *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) (minimal injuries are issues resolvable as a matter of law). As otherwise stated herein, Scatchell Sr. thus cannot meet his burden on those fundamental elements of his claims. Consequently, Count I should be dismissed, with prejudice.

C. Since Scatchell Sr. suffered no deprivation, there was no retaliation.

Where Scatchell Sr.'s retaliation claim relies upon the same narrative, it should suffer the same fate. Scatchell Sr. essentially claims that retaliation against his career prospects was the method used to attempt to chill his exercise of First Amendment rights – so where it has been shown that there was no First Amendment violation, it follows that there was no retaliation. But even indulging the point, the claimed "retaliation" also cannot suffice because it entails positions to which he did not have an automatic entitlement or perceived insufficient responses to slights to which he had no entitlement to direct the Village's response. Being "passed over" for a deputy chief position before it has ever been awarded and when it is a discretionarily awarded position that does not involve an application but a nomination process based on the trust of leadership does not amount to an

actionable harm. Nor is Scatchell entitled to insist on discipline for a separate officer who has not been fully investigated at the time he resigned his employment, or direct a particular course of investigation for other incidents. See and cf. JSOF ¶¶ 143-147.

Scatchell Sr. seems to string his parade of accusations together in the hope that mere sequence in time will turn a retirement into a constructive discharge. But it bears repeating that the proximity in time alone of events is insufficient to show that one spurred another. See *Mascow v. Bd. of Educ. of Franklin Park School Dist. No. 84*, 950 F.3d 993, 995 (7th Cir. 2020) (contention that union representative's speech preceded reduction in professional standing amounted to *post hoc ergo propter hoc* fallacy); see also *Daza v. Indiana*, 941 F.3d 303, 310 (7th Cir. 2019) (evidence of affiliation is not enough; there must also be evidence that such affiliation related to an employment decision). This is all the more true where he seeks to hold Mayor Serpico individually liable. Cf. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010), citing *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'")

The bottom line is the arrow Scatchell Sr. attempts to draw between Mayor Serpico and himself is too attenuated and too reliant on outlandish conclusions and impermissible inferences to succeed. At the summary judgment stage, proving causation is subject to a burden shifting method of resolution. *Kidwell v. Eisenhower*, 670 F.3d 957, 965 (7th Cir. 2012). The plaintiff has the opportunity to show the sufficiency of his explanation as a possible motivating factor; the defendant has the opportunity to offer alternative explanations; and, the plaintiff then bears the burden of showing that the explanation could be deemed pretextual. *Id.*; *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). But Scatchell Sr.'s narrative fails on all fronts here. He offers no suggestion that Mayor Serpico took any action at all that was directly related to any awareness of Scatchell Sr. or his views. Instead, the record is clear that Mayor Serpico's nomination of Rogowski for Deputy Chief

was based upon his estimation of Rogowski's qualifications, that Mayor Serpico had no involvement in Pitassi's restructuring of the department and day-to-day management otherwise, and that Mayor Serpico was wholly unaware of any issue related to Scatchell Sr. or Lavalais until well-after Rogowski was promoted.

Lacking a basis to viably claim that Mayor Serpico retaliated against him through the MPPD's regular operations, Scatchell Sr.'s Count II must fail.

### D. Scatchell Sr. also cannot meet the elements to prove a conspiracy.

Finally, the lack of coordinated action between Mayor Serpico and the other individual defendants concerning the operations of the Village's police department further doom Scatchell Sr.'s conspiracy claim as leveled at Mayor Serpico. To state a claim under § 1983 for civil conspiracy, a plaintiff must allege facts from which the Court may reasonably infer that there was (1) an express or implied agreement among defendants to deprive him of a constitutional right; and (2) actual deprivation of that right through overt acts in furtherance of the conspiracy. *Sherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). This burden incorporates a further requirement that the underlying factual support for the supposed conspiracy include a "meeting of the minds." See, e.g. *Thompson v. Vill. of Monee*, 2013 WL 3337801. In other words, it is not sufficient to allege merely that multiple entities acted in concert, as they must have also done so with mutual understanding. *Id.*, citing *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980). As Illinois's Supreme Court has analogously observed: "There is no such thing as accidental, inadvertent or negligent participation in a conspiracy." *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54 (1994). Moreover, the Seventh Circuit has repeatedly held that conspiracy claims for violation of constitutional rights are superfluous when all actors involved are public employees. See *Scott v. City of Chicago*, 619 F.App'x 548 (7th Cir. 2015); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Here, that causes Scatchell Sr.'s conspiracy claim to fail for multiple reasons. First, there is no evidence in the record regarding any express agreement among Mayor Serpico and others to attack Scatchell Sr.'s career prospects as a deterrent to protected activity. Scatchell Sr.'s only argument on this point requires speculation about hidden agreements between Village leaders, and thus requires inferences and assumptions to which he is not entitled at the summary judgment stage. In fact, even if it could be said that, for example, the decision to promote Deputy Chief Rogowski rather than Scatchell Sr., had a deterrent effect on Scatchell Sr.'s desire to advocate against the Village's enforcement of residency – he still would not meet that element of a conspiracy claim without showing that the would-be conspirators promoted Deputy Chief Rogowski for that actual purpose and not based on some other reason (qualifications, agreeableness, etc.) that had an incidental effect. Cf. *Adcock* (no such thing as accidental conspiracy).

Second, Scatchell Sr.'s conspiracy claim fails because there is no underlying constitutional deprivation, as noted above, regardless. Third, it fails because Scatchell Sr. is attempting to portray the decision-making process of a governmental entity as separable into a collusive endeavor of its individual agents – despite ample case law detailing that such claims are not permitted. Employees of a corporation (municipal or otherwise) do not become co-conspirators when acts within the scope of their employment are said to be retaliatory. *Tabor v. City of Chicago*, 10 F.Supp.2d 988, 994 (N.D. Ill. 1998), citing *Travis v. Gary Comm. Mental Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). Instead, the intercorporate conspiracy doctrine preserves independent decision-making by entities and their agents, including § 1983 claims against governmental entities. See *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1507-08 (7th Cir. 1994); *Strauss v. City of Chicago*, 346 F.Supp.3d 1193, 1210 (N.D. Ill. 2018).

Put another way, actions taken by public officials in full view of the citizenry, such as police department appointments made at a public meeting, are not the sort of fact pattern conspiracy

claims envision. Whether or not there is some other viable avenue through which to challenge a governmental action does not alter that analysis. By definition, Mayor Serpico did not preside over public meetings in secret. The command structure of the police department was not held confidentially. There was no conspiracy here, regardless of the Court's view of Scatchell Sr.'s treatment by the MPPD relating to the Village's residency ordinance – and certainly no actionable illicit plan between Mayor Serpico and co-conspirators independent of the Village.

Mayor Serpico is entitled to dismissal of Count IV.

## Conclusion

Scatchell Sr. tells lurid tales in this case of the alleged dysfunction of the MPPD, hoping the stain of such accusations contemporaneous with his retirement will amount to an actionable case of retaliation against him on his way out the department door. But his evidence is lacking. There is no indication that Scatchell Sr. was pushed to retire, or denied any professional benefit, because of his personal views or their expression. Nor is there any evidence whatsoever that Mayor Serpico was personally involved in some scheme to punish him.

Consequently, Scatchell Sr.'s claims should be dismissed, with prejudice.

WHEREFORE, Defendant, Mayor RONALD M. SERPICO, respectfully requests this Honorable Court grant summary judgment, dismiss all claims pled against him with prejudice, and in so doing, further order any and all such other relief as is just and proper.

[signature page to follow]

        Respectfully submitted,
        Mayor RONALD M. SERPICO

By:    /s/ *K. Austin Zimmer*
        K. Austin Zimmer
        *One of his attorneys*

K. Austin Zimmer (#6276227)
Timothy A.M. Woerner
DEL GALDO LAW GROUP, LLC.
*Attorneys for Mayor Serpico*
1441 S. Harlem Ave.
Berwyn, IL 60402
(708) 222.7000 (t) | (708) 222.7001 (f)
zimmer@dlglawgroup.com