**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN SCATCHELL, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-3989 |
| v. | ) | |
| | ) | The Hon. Judge John F. Kness |
| VILLAGE OF MELROSE PARK, | ) | |
| ILLINOIS, *et al.*, | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT RONALD M. SERPICO'S MOTION FOR**
**SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION FOR SUMMARY JUDGMENT (DKTS. 92, 93, 94)**

Plaintiff, John Scatchell, Sr. ("Scatchell"), by and through is undersigned counsel, Cass

T. Casper, Esq., DISPARTI LAW GROUP, P.A., responds as follows to Defendant Ronald M.

Serpcio's ("Defendant" or "Serpico") Motion for Summary Judgment (Dkt. 93) and

Memorandum of Law in Support of His Motion for Summary Judgment (Dkt. 94) ("Motion").

For the following reasons, Defendant's Motion should be denied in its entirety.

**LEGAL STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT**

1. <u>General Summary Judgment Standards.</u>

"Summary judgment is appropriate where the record shows that there is no genuine issue

of material fact and that the moving party is entitled to judgment as a matter of law." *Lexington*

*Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). "A court must construe all

facts in the light most favorable to the non-moving party and draw all reasonable and justifiable

inferences in favor of that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[S]ummary judgment is not appropriate if a dispute about a material fact is genuine, that is, if

the evidence is such that a reasonable jury could return a verdict of the nonmoving party." *Roger Whitmore's Automotive Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 667 (7th Cir. 2005).

    2.  <u>Standards For Plaintiff's First Amendment Retaliation Claims In Counts 1 And 4.</u>

       Plaintiff states a First Amendment retaliation claim against Defendant Serpico in Count One and a conspiracy to deprive of First Amendment rights in Count Four.  (Dkt. 71, ¶¶140-149, ¶¶167-173). "To prevail on a First Amendment retaliation claim, a public employee must show that: (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation because of her's employer's action; and (3) her protected speech was a but-for cause of the employer's action." *Diadenko v. Folino*, 741 F.3d 751, 755 (7th Cir. 2013).  If a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that it would have taken the same action in the absence of the protected speech. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).  If the employer carries this burden, the plaintiff may still reach trial by producing sufficient evidence to allow a reasonable fact finder to determine that the employer's reasons were merely a pretext for adverse action against the employee, at least in part, for exercising First Amendment rights. *Id.* With respect to the third factor, a plaintiff must show that the exercise of his First Amendment rights was a motivating factor for the employer's action. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.*

       With respect to the conspiracy claim in Count Four, Plaintiff must show a genuine issue of material fact exists that there was (1) an express or implied agreement among Defendants to deprive Plaintiff of his constitutional rights, and (2) there were actual deprivations of those rights in the form of overt acts taken in furtherance of the agreement. *Thurman v. Village of Hazel*

*Crest*, 570 F.Supp.2d 1019, 1029 (N.D. Ill. 2008) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). "To sustain a claim that defendants conspired to deny plaintiff's constitutional rights, plaintiff must allege that defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and support such allegations with facts suggesting a 'meeting of the minds.'" *Id.* (citing *Amundsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000)).

    3.  <u>Standards For Plaintiff's 42 U.S.C. § 1981 claim via 42 U.S.C. § 1983 In Count 2.</u>

    Plaintiff also states a 42 U.S.C. § 1981 claim via 42 U.S.C. § 1983 against Defendant Serpico in Count Two. Retaliation claims under 42 U.S.C. 1981 are recognized in this jurisdiction. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 401 (7th Cir. 2007). Public sector entities may be liable under 42 U.S.C. § 1981 via 42 U.S.C. § 1983. *Campbell v. Forest Preserve District of Cook County, Illinois*, 752 F.3d 665, 667 (7th Cir. 2014). Individuals may be liable for retaliatory acts under 42 U.S.C. § 1981. *See Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) *overruled on other grounds in Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

    Historically in this jurisdiction, the same prima facie requirements applicable in Title VII cases are applied in 42 U.S.C. § 1981 cases. *Humphries*, 474 F.3d 387, 403 (7th Cir. 2007). "Retaliation claims under § 1981 can also be established under either the direct or indirect method of proof. *Coleman*, 667 F.3d at 859. Under the direct method of proof, a plaintiff must show that: (1) she engaged in a protected activity; (2) Defendant took an adverse employment action against her; and (3) there was a causal connection between the two. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887–88 (7th Cir.2016) (citing *Tank v. T–Mobile*, 758 F.3d at 807 (7th Cir.2014)). Under the indirect method of proof, the plaintiff must show (1) she

engaged in statutorily protected activity; (2) she met Defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657–58 (7th Cir.2012). However, to be clear, the foregoing "direct" and "indirect" distinction was overruled in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016), and now all evidence is to be analyzed in a "single pile," although *Ortiz* appears to continue to embrace the general elements requiring proof discussed in the previous framework. *Id.* at 766. *Ortiz*' admonition applies as much to 42 U.S.C. 1981 cases as to Title VII cases. *Id.*

## ARGUMENT

### 1. Serpico's "Incorporated" Arguments Are Insufficiently Developed And Must Be Denied.

Defendant attempts to incorporate the arguments made by the other Defendants "to the extent relevant," but gives no explanation for why or how those arguments apply, or even which of such arguments apply, much how they are relevant even to an extent. (Dkt. 94, p. 3). These arguments are, accordingly, waived. *See United States v. Brown*, 669 F.3d 10, 16 (1st Cir. 2012); *United States v. Espinal-Almeida*, 699 F.3d 588, 599 (1st Dist. 2012) (criminal defendant's generic statement of joining in another defendant's arguments is insufficient); *United States v. Casas*, 425 F.3d 23, 30 (1st Cir. 2005) ("issues that are averted to in a perfunctory manner absent developed argumentation are waived.").

### 2. There Is A Genuine Issue Of Material Fact As To Whether Or Not Mayor Serpico Had Knowledge And Involvement In This Case.

Defendant first argues that there is no evidence that he had knowledge of Scatchell's support of Lavalais' grievance going to arbitration (Dkt. 94, pp.3-4), that there is no evidence he

took Scatchell's support of Lavalais into account in promoting Rogowski over Scatchell to Deputy Chief (Dkt. 94, p.4), and no evidence Serpico knew of Scatchell's opposition to an officer laterally transferring into Melrose Park's police force at a pension board meeting. (Dkt. 94, p.5). Serpico claims the lack of evidence of knowledge is a threshold issue that requires summary judgment on the First Amendment claim against him. However, as will now be discussed, there is overwhelming circumstantial evidence that Serpico did have knowledge of Scatchell's protected activity, that Mayor Serpico is simply not credible in his denial of knowledge of such activity, and summary judgment should be denied on this basis and tested by a jury.

First of all, the overwhelming record evidence shows that Mayor Serpico maintains nothing less than a total stranglehold over everything that happens in the Village, and there is a genuine issue of material fact as to whether or not Serpico knew about Scatchell's opposition to Lavalais' forced relocation into the Village and Scatchell's support of Lavalais' grievance. Circumstantial evidence supports Serpico's knowledge of Scatchell's viewpoints on Lavalais' situation. For example, Gianna Scatchell sent a letter to Del Galdo Law Group articulating the FOP's opposition to Lavalais' relocation order and support of a grievance for arbitration. (PSOF ¶29). Mayor Serpico would have been aware of Scatchell's daughter's and the FOP's position on the Lavalais situation as a matter of these communications between Plaintiff's daughter and the Village's law firm back in 2016. *See* (PSOF ¶¶27, 29). Indeed, Scatchell testified that Director Police Pitassi told him in his office, "You believe this fuckin n*****? I can't believe he wants. . .This n***** is out of his mind," and "He wants to sue. He don't want to live here." (PSOF ¶32). So too, Officer Dennis Natale testified that the FOP had not arbitrated a grievance at the Village of Melrose Park in over 10 years – making this situation with Lavalais highly unusual and

unprecedented in a decade. (PSOF ¶32). So, (1) the Village's Attorneys know about Lavalais'
and Scatchell's position on Lavalais' situation, (2) Director Pitassi knows about it according to
Scatchell, and (3) it is highly unusual for a grievance to go to arbitration and had not happened in
at least a decade according to Natale. (PSOF ¶32). Further, Serpico never expressly denied
having a conversation with Scatchell about his position on Lavalais; rather, he denied having a
recollection of it. (PSOF ¶27). Rogowski, too, confirmed that FOP meetings were held on the
premises of the police department, and that officers often discussed topics from union meetings
at the police department. (PSOF ¶32).

Adding to the circumstantial factors summing up to Serpico having knowledge of
Scatchell's FOP position is timing of his actions in punishing Scatchell. For example, it is
undisputed that Scatchell's daughter sent an email to the Village's attorneys on November 10,
2016 outlining the FOP's opposition to Lavalais having to relocate and threatening arbitration
and administrative discovery. (PSOF ¶¶33-35). Scatchell's name, though, suddenly was placed on
the November 11, 2016 Village Board of Trustees' agenda for promotion to Deputy Chief.
(PSOF ¶37). In other words, the day after Scatchell's daughter writes a letter to the Village
lawyers expressing FOP's opposition to the Lavalais situation, Scatchell is suddenly coaxed to
change his position as if with a carrot. Also undisputed, too, is that the promotion to Deputy
Chief was tabled on November 14, 2016. (PSOF ¶37). Where the carrot did not change
Scatchell's position, the timing indicates that it was the stick that Serpico thought might do so –
dangle a promotion in front of Scatchell, and then table it to send a message of who controls the
police department at the Village. (PSOF ¶37). Why was the Mayor engaged in this putting
Scatchell on the agenda for a promotion only to table it a few days later, all conveniently just
days after the Lavalais' situation erupted on November 10, 2016? Well, any rational fact finder

can see what the Mayor of this small town was doing: he was trying to line up his troops with an

incentive for a promotion, and then revoking that incentive. Scatchell testified that this was

exactly what the Mayor was doing, too, trying to secure Scatchell's opposition to a Lavalais

arbitration. (PSOF ¶37). This timing is so close in time to Scatchell's daughter's letter to the

Village Attorneys as to create an inference that Mayor Serpico knew all about Scatchell's

position as to Lavalais as FOP President. *Cf. Kidwell v. Eisenhauer*, 679 F.3d 957, 966-967 (7th

Cir. 2012). Even by the "close on the heels" standard that this jurisdiction follows, this few days

is valid circumstantial timing evidence to support an inference that Serpico knew darn well about

Scatchell's positions as to Lavalais:

"[t]he closer two events are, the more likely that the first caused the second." *Id.* But it is clear
from our case law that the time period between the protected activity and the adverse action must
be "very close." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508,
149 L.Ed.2d 509 (2001)). For an inference of causation to be drawn solely on the basis of a
suspicious—timing argument, we typically allow no more than a few days to elapse between the
protected activity and the adverse action. *See, e.g., id.* at 314–15 (holding that a worker who
handed his supervisor a note that complained of workplace discrimination and was immediately
fired had established an inference of causation by way of suspicious timing); *Casna v. City of
Loves Park,* 574 F.3d 420, 422–23, 427 (7th Cir.2009) (holding that a one-day time period
between the employee's complaint and her supervisor's recommendation to fire her was
sufficient); *McClendon v. Ind. Sugars Inc.,* 108 F.3d 789, 796–97 (7th Cir.1997) (holding that a
two- to three-day time period between the employee's complaint and his discharge was
sufficient)."

    *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012). To sum all of this evidence

up so far, we have (1) Scatchell expressing his opposition to the Lavalais situation to Director

Police Pitassi and Scatchell hearing Pitassi's profanity-laden response, (2) Natale saying nothing

ever got arbitrated in the Village, making the Lavalais' situation very unique, (3) Scatchell's

daughter, Gianna Scatchell, writing the Village's attorneys expressing the FOP's opposition to

the Lavalais' situation – which is as father-daughter as one could get, given SCatchell is FOP

President and Gianna is his daughter, and (4) suddenly Serpico puts Scatchell on the Village

Board's agenda for promotion the day after his daughter's letter to the Village's lawyer, and then tables the promotion at the next meeting. If this does not suffice to create a triable issue of fact as to whether Serpico knew of Scatchell's opposition to the Lavalais residency order and his position on arbitrating a grievance, then any Defendant can deny knowledge or protected activity and win on summary judgment and we might as well not use circumstantial evidence and only ever require direct evidence as a matter of law.

Another issue Serpico hints at in his argument is that it is the Village Board of Trustees that makes promotions, not Serpico on his own. But this was totally debunked in Serpico's deposition, where he admitted that the Board is essentially a rubber stamp for his decisions, it has no history of disagreeing with his personnel decisions or voting against Serpico's recommendations, and Serpico did not have to consult anyone before making recommendations to the Board for promotions. (PSOF ¶46). Again – that was Serpico's testimony, so to the extent his memorandum claims he lacks power to independently make promotion recommendations and decisions, Serpico's own deposition testimony debunks this argument. (Dkt. 94, p. 4). Indeed, it is even disingenuous for Serpico to suggest the Village Board promoted Rogowski, when Serpico himself said he did and no one else was involved. (PSOF ¶255).

In his memorandum, Serpico fixates on his not being copied on Scatchell's daughter's email and avers that he did not know Scatchell's daughter represented the FOP lodge of which Scatchell Sr. was President. (Dkt. 94, pp.4-5). But all the circumstantial evidence indicates that he is not being truthful, as others high up in the Village's administration were aware of these facts: the Del Galdo Law Group and Director Pitassi, and then the bizarre timing of Serpico placing Scatchell on the agenda for promotion and then tabling it. This is enough circumstantial

evidence to create a triable issue of fact as to Serpico's involvement and knowledge of Scatchell's protected activity.

3. **Mayor Serpico Is Not Entitled To Summary Judgment On Plaintiff's First Amendment Claim.**

    i. Scatchell Sr. Has Presented Sufficient Evidence To Present A Triable Issue Of Fact As To Whether He Engaged In Constitutionally Protected Speech.

Serpico argues first that Scatchell did not engage in constitutionally-protected speech because he claims Scatchell was silent at FOP meetings and signed the declarations on behalf of Lavalais as FOP President, not as an individual (Dkt. 94, p.6), and because to establish protected speech an employee must speak on a topic related to political, social, or other concern to the community. (Dkt. 94, p.6). Serpico argues that the declarations are insufficient to constitute constitutionally-protected speech and contain no "advocacy statements." (Dkt. 94, p.6).

First, Serpico undershoots all the speech evidenced in the record. Scatchell, for example, had a conversation with Pitassi in the latter's office where Scatchell told Pitassi with respect to Lavalais, "He's a member of the FOP...if we have the right to represent him I will back him one hundred percent to go to the arbitration." (PSOF ¶22, 32). Scatchell testified that Pitassi knew about his support of Lavalais' grievance and position from the meeting in Pitassi's office in or about December 2016. (PSOF ¶211). Within days of that meeting, FOP set Lavalais' grievance for arbitration. (PSOF ¶211). As Scatchell was the President of FOP, the very act of FOP's setting the grievance for arbitration constituted a communicative act. Indeed, Serpico even concedes that "advocacy on behalf of other officers, including via participation in the FOP, would be protected speech." (Dkt. 94, p.6). Plaintiff agrees with this concession and submits that the undisputed evidence just highlighted shows that Plaintiff engaged in protected speech. Serpico and Plaintiff are legally-correct, too, as it is well-established that union organizing and

advocacy activity "touches upon matters of public concern." *Gregorich v. Lund*, 54 F.3d 410, 415-16 (7th Cir. 1995); *cf. American Postal Workers Union v. U.S. Postal Serv.*, 830 F.2d 294, 301 (D.C.Cir. 1987) ("The urge to unionize certainly falls within the category of expression that is 'fairly considered as relating to any matter of political, social, or other concern to the community.'"). Union advocacy and activity is particularly on a matter of public concern where not motivated by self-interest, which Scatchell's advocacy on behalf of Lavalais in no way was because Scatchell was not impacted by the residency order and was advocating for a fellow union member. *Id.* at 416; (PSOF ¶¶202, 203, 204).

Of course, the overall content, form, and context of the First Amendment activity must be examined to ascertain if speech is on a matter of public concern. In that respect, it bears examining what the record shows the grievance was actually about. It is undisputed that Kyll Lavalais was an African-American Sergeant on the Melrose Park Police force who was hired as an officer there as part of a consent decree entered by the Village in the 1980s. (PSOF ¶199). Kyll was one of the only black officers in Melrose Park as of the events of this case. (PSOF ¶¶244-245). By ordering Lavalais to reestablish residency within the Village, Scatchell took it as an affront to the affirmative action plan that resulted in Lavalais' hiring in the first place, and jeopardized the career of one of the last black officers on the force because Lavalais lived outside of Melrose Park, and to remain employed there he would have to essentially purchase a new home and leave his current home. *Scatchell Affidavit*, ¶¶2-3. Even Serpico admitted in his deposition that the racial composition of the Village's workforce is an issue of public importance, which is exactly what Scatchell's support of Lavalais' grievance was doing, supporting the ability of Lavalais to continue to work in Melrose Park while living outside of the Village boundaries. (PSOF ¶256). *See also Gray v. Lacke*, 4885 F.2d 399, 413-14 (7th Cir. 1992)

(grievance over pay disparity between males and females was not a mere personal dispute and involved a criticism of the employer, and also affected multiple employees, which made it a matter of public concern); *Knapp v. Whitaker*, 757 F.2d 827, 840-41 (7th Cir. 1985) (mileage grievance affecting many teachers other than the complaining teacher touched on a matter of public concern). Here, Scatchell's support of Lavalais' grievance and its movement to arbitration is the ultimate communicative act of support on a matter of public concern: it not only involved someone other than Scatchell, it involved an issue going to the heart of the racial composition of Melrose Park's police force – could Lavalais stay on the force without undergoing a financially decimating move into the Village? Defendant's argument that somehow Scatchell did not express "enough" support or engage in a "speech" act is unpersuasive – for goodness' sake he was the FOP President at the time Lavalais presented the grievane and oversaw its approval to arbitration, in addition to his conversation with Pitassi about it. Serpico's motion should be denied on this basis.

      ii.    <u>Scatchell Sr. Has Presented Sufficient Evidence To Present A Triable Issue Of Fact As To Whether He Suffered An Adverse Employment Action.</u>

Next Serpico claims that Scatchell suffered no adverse employment actions, and, therefore, his retaliation claims die on such basis as well. (Dkt. 94, p. 7). Serpico's argument is so perfunctory and undeveloped on this point that it should be found waived; however, charitably read, it fails for the following reasons. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived).

It is undisputed that Pitassi unilaterally transferred Scatchell to Station Supervisor, a position that resulted in Plaintiff losing actual command of a shift of officers and having to humiliatingly piddle around the station without an actual defined job. (PSOF ¶¶81, 82, 83, 90). For example, in this assignment Scatchell was relegated to actually supervising officers on a

regular shift, to inspecting the police department's building conditions. (PSOF ¶90). Plaintiff was also reassigned to a back office known as the whole that did not house a shift, and that was filthy and disgusting such that Scatchell had to make his own improvements and provide some of his own furnishings in it. (PSOF ¶¶97, 101, 103). Case law is clear that transfer to a new office with subpar working conditions constitutes an adverse action. *See Lariviere v. Bd. of Trs. of Southern Ill. Univ.*, 926 F.3d 356, 360 (7th Cir. 2019) (transfer to a new office with subpar working conditions was adverse); *see also Vance v. Ball State University*, 646 F.3d 461, 473 (7th Cir. 2011) ("[I]f a challenged action would discourage other employees from complaining about employer conduct that violates Title VII, it constitutes an adverse employment action."). Accordingly, the adverse actions Scatchell suffered so far include (1) transfer to station supervisor, (2) transferred to a shabby office, and (3) loss of supervisory responsibility for immediate subordinates. The Seventh Circuit has also grouped adverse actions into categories in which the foregoing adverse actions fall, recognizing: (1) there "are cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and [(2)] cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *Herrnreiter v. Chi. Hous. Auth.,* 315 F.3d 742, 744–45 (7th Cir.2002). Scatchell attests in his affidavit that the station supervisor transfer and lack of subordinates and police work involved, indeed, lead to an atrophy of his skills in supervising and police work. *Scatchell Declaration*, ¶¶2-3.

Standing alone or together, each of the foregoing three actions together are sufficient to create a triable issue of fact as to whether Scatchell suffered sufficiently adverse employment actions, but especially when all three are analyzed together. But that is not the end of the adverse employment actions in this case. Scatchell also was the victim of a bomb[1] being thrown at his residence that went uninvestigated and without conclusion, despite that it was a very serious attack on his and his family's safety. (PSOF ¶¶128, 129, 131, 132, 133). Scatchell was subject to comments at work such as "the eyes of Texas" were on him. (PSOF ¶¶107, 119). When a subordinate, Nello Barone, grossly disrespected Scatchell at work, Defendants did not investigate Barone at all even though this undermined Scatchell's command As part of the transfer to Station Supervisor, Scatchell was assigned one of the oldest police vehicles in the fleet that had multiple services issues and reeked of smoke. (PSOF ¶112). Scatchell was also suddenly the subject of an "anonymous letter" accusing him of shopping at Target in uniform and driving his truck around on work time. (PSOF ¶118). This is significant because an "anonymous letter" was also used to target Scatchell's son, John Scatchell, Jr., which is an entirely different adverse action Plaintiff suffered here. With respect to that issue, Plaintiff has alleged that the very targeting, discipline, and termination of his son, John Scatchell, Jr., is itself yet another adverse action he suffered as a result of his support of Lavalais.

In the latter respect, it is undisputed that John Scatchell, Sr. is Plaintiff's son, and that he was also employed as a Village police officer. (PSOF ¶¶154, 155). It is also undisputed that Scatchell's son began to be investigated when an anonymous letter showed up claiming he was

---

[1] The record all throughout many of the depositions contains a labeling debate between Plaintiff and Defendants about whether to label this a "bomb" or a "firework." The label does not matter – and, by the way, it was loud enough to bring Scatchell out of his bedroom and house – because the fact is Defendants did no *bona fide* investigation into it. *That* is the true adverse action here. For example, Graziani who was one of the responding officers, did not take physical evidence and that he did not know what dynamite debris would look like, and that "he was not saying it was not" a bomb. (PSOF ¶134).

going out hunting while on medical leave with Vito Scavo, who is a convicted felon. (PSOF ¶¶159-160). Some of the facts related to Scatchell Jr.'s investigation and termination are undisputed, including that he was, in fact, terminated by the Board of Fire and Police Commissioners based on charges filed by Director Pitassi and Deputy Chief Castellan. (PSOF ¶¶163, 177). Here is the problem, however, that turns what happened to Scatchell, Jr. into an adverse action against Scatchell, Sr.: when added to the other adverse actions against Scatchell, Sr., the Plaintiff's position is that all of this was intended as ongoing punishment against Plaintiff for crossing the Village's administration on Lavalais. In other words, the Village and individual Defendants were not satisfied with attacking just the father, they would also get him through is son. And the United States Supreme Court has acknowledged that an employer's adverse actions against a family member may be an actionable adverse action. *See, e.g.*, *Thompson v. North American Stainless, LP*, 131 S.Ct. 863, 868 (2011) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."). *Thompson*, indeed, broadly acknowledged that third-party reprisals may violate Title VII. *Id.* There is no reason for a different rule in the First Amendment retaliation context.

But what about Scatchell, Jr's alleged misdeeds, if they occurred? That is the other point in the First Amended Complaint: tons of officers were proved in discovery to have associated with known felons, or to have abused sick leave, and nary a one of them got terminated over it. For example, Defendant Castellan's nephew, Giovanni Castellan, received excessive force complaints and was actually arrested for disorderly conduct, while working for Melrose Park as an officer, but was not fired for it. (FAC, Dkt. 71, pp.22-23). Defendant Pitassi's son negligently fired a duty weapon in a bathroom stall, and only had to forfeit two vacation days. *Id.* at p.24. A slough of other disparate treatment examples were pleaded in the Amended Complaint. *See Id.* at

pp. 25-29. But most damagingly, multiple of the Defendants themselves admitted during their depositions to associating with felons themselves outside of work! *See* (PSOF ¶¶241, 242, 243, 257, 258, 259). In other words, why was Scatchell, Jr. fired for associating with Vito Scavo, when even the Defendants are associating with known felons in the Village and no one else is being fired for it? For example, Pitassi confirmed the accuracy of telephone records showing that he, Deputy Chief Castellan, and Deputy Chief Rogowski all had regular telephone communications with Gary Montino in 2018 and 2019, the latter being a convicted felon. (PSOF ¶258). Pitassi even admitted that he regularly spoke with Rick Cervone, also a convicted felon, about "when he's going to make Italian sausage and when he's going to make peppers." (PSOF ¶257). And Castellan admitted that he and Giovanni Castellan, his nephew, were pictured in photographs with Ric Cervone, but neither Defendant Castellan nor Giovanni were brought up on charges for violating the prohibited felon contact policy. (PSOF ¶¶241-242). Plaintiff's point is, why was his son terminated for going duck hunting with Vito Scavo, but all these other officers associate with convicted felons and none of them were even disciplined for it? The inference to be drawn is because they were punishing Plaintiff for his position against the Village administration in the Lavalais matter, just like in *Thompson*. Or, at a minimum, a jury could find as much.

Defendant cites *Mascow v. Bd. of Educ. Of Franklin Park School Dist. No. 84*, 950 F.3d 993, 995 (7th Cir. 2020), but that case is about a tenured teacher who was laid off as part of a reduction in force and sued for, *inter alia*, a claim it was for protected speech. *Id.* However, there, the teacher's speech occurred in "2014 and 2015 meetings" and a "bad rating in 2017 could not reasonably be attributed to two specific meetings in the summers of 2014 and 2015." *Id.* at 995. *Daza v. Indiana*, 941 F.3d 303, 310 (7th Cir. 2019), too, involved a case where the

plaintiff ponied up no evidence whatsoever of similar-situated employees who did not engage in protected activity being treated better, had no evidence that complaints he made or responses thereto related to his protected activity, and alleged disparate discriminatory acts spanning four years culminating in the plaintiff's firing for using a gay slur at a training session. *Id.* at 308 to 309. *Daza* could not be more factually distinct from this one, and had none of the circumstantial evidence of this one that is discussed above.

Finally, Serpico makes a perfunctory argument that "Mayor Serpico's nomination of Rogowski for Deputy Chief was based upon his estimation of Rogowski's qualificaitons." (Dkt. 94, pp.10-11). Then why did Serpico first nominate Scatchell for Deputy Chief the day after Scatchell's daughter complained about Lavalais, only to actually select Rogowski as Deputy Chief thereafter? This is a quintessential "shifting explanation / behavior," and is just further circumstantial evidence that Serpico not only knew of Scatchell's opposition to the Lavalais situation, but acted in retaliation for it – by dangling a promotion and then withholding it and giving it to Rogowski. *See, e.g.*, *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 724 (7th Cir. 2005) ("[S]hifting justification, combined with the other circumstantial evidence of race discrimination, provides sufficient circumstantial evidence [of discrimination]. . .and warrants submission of the issue to a trier of fact.").

iii.    Scatchell Sr. Has Presented Sufficient Evidence To Create A Triable Issue Of Fact As To Causation Between His Support Of Lavalais And The Adverse Actions That Followed.

Defendant next devotes an entire two-and-a-half-page section of his memorandum to criticizing the Amended Complaint for being "scattershot" without citing to the Rule 56 statement more than one time at the end. (Dkt. 94, pp.7-9). This violates this Court's standing order on Summary Judgment motions containing improper arguments, and violates Local Rule

56.1(g) requiring that memoranda "must cite directly to specific paragraphs in the LR 56.1 statements or responses." *LR 56.1(g)*. The upshot of this section though, is that, Defendant claims, Plaintiff has not proved an adverse employment action, nor that he engaged in protected speech, and cannot prove causation. But again, devoid of any relevant Rule 56 statement citations, this section is impervious to meaningful response. And, as identified above, and below, Plaintiff has produced a bevy of circumstantial evidence showing that his protected conduct in supporting Lavalais led directly to Serpico dangling and then denying him a promotion to Deputy Chief, and then to the other adverse actions such as transfer to Station Supervisor, to a disgusting office, and the investigation and termination of his son, John Scatchell, Jr. based upon conduct other officers engaged in, but were not investigated or terminated over. (PSOF ¶¶27, 29, 32, 37, 97, 101, 103, 168, 171, 177). Defendants' multi-page scree about surplusage in the Complaint, frankly, has no bearing on the summary judgment process and should be stricken. The only arguable relevant citation in this section is to *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020), but that case actually held that questions of sufficiency of an adverse employment actions are "generally a question of fact," and not one of law except when truly minimal, which this case does not involve. *Id.* at 647.

4.  <u>A Genuine Issue Of Material Fact Exists As To Whether Plaintiff Suffered An Actionable Deprivation And Whether There Was Retaliation.</u>

In part C of his Memorandum, Serpico rehashes his earlier arguments about lack of causation and adverse actions. (Dkt. 94, pp.9-11). These have already been addressed above and Plaintiff refers the Court to his arguments in those sections as his response here; however, a few points bear reemphasis.

First, it is untrue that Scatchell is merely relying on timing for his evidence of retaliation and causation. The timing, it is true, is very significant because at the outset Mayor Serpico

dangled a promotion to Deputy Chief in front of Scatchell just the very next day after Scatchell's daughter wrote the Village's lawyers expressing her Dad's (and the FOP's) position in support of Lavalais, only to table it shortly thereafter. (PSOF ¶¶27, 29, 211). This is not a case of too-attenuated timing, but is within the line of cases where the timing is close enough to matter. *Cf. Casna v. City of Loves Park,* 574 F.3d 420, 422–23, 427 (7th Cir.2009) (holding that a one-day time period between the employee's complaint and her supervisor's recommendation to fire her was sufficient); *McClendon v. Ind. Sugars Inc.,* 108 F.3d 789, 796–97 (7th Cir.1997) (holding that a two- to three-day time period between the employee's complaint and his discharge was sufficient). But it is not just timing, it is also targeting of Scatchell, because an ongoing parade of adverse actions followed his support of Lavalais: he was passed over for promotion, he was transferred to Station Supervisor, he was given a disgusting, decrepit office, his subordinates were removed from his oversight, he was not given an actual job to perform, all his prestige and honor were undercut from him as a Lieutenant, the disrespect paid him by Nello Barone went unacknowledged by the individual Defendants, the bomb thrown at his and his family's house went without serious investigation, Scatchell was subjected to an anonymous complaint and – too conveniently – so was his son, and then Scatchell's son was investigated and fired for similar conduct other officers – including the individual Defendants' and their family members – engaged in but without any or very little discipline. The latter is part of the circumstantial evidence "that employees similarly situated to the plaintiff. . .received systematically better treatment." *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 728 (7th Cir. 1986). The other part of that set of evidence here is all the evidence of better systematic treatment of employees who did not engage in support of Lavalais: Rogowski received the promotion to Deputy Chief, Giovanni

Castellan was not investigated and fired for associating with a convicted felon, Michael Castellan was not investigated and fired for associating with a convicted felon, Steven Rogowski was not investigated and fired for associating with a convicted felon, Director Pitassi was not investigated and fired for associating with a known felon about peppers and sausages. And then there are all the other instances of other officers engaging in misconduct who were not investigated or at least not fired, such as Pitassi's son firing a weapon in a bathroom stall. All of this is in addition to the timing that began the day after Scatchell's daughter contacted the Village and is circumstantial evidence of causation and motivation to retaliate against Scatchell. Admittedly, some of this is directed at Scatchell's son, but that is one of the theories of this case: the sins of the Father were visited on the son – and *Thompson*, anyway in the Title VII context, says that may constitute an actionable adverse action. *Thompson v. North American Stainless, LP*, 131 S.Ct. 863, 868 (2011) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired.").

There is also a third type of recognized circumstantial evidence, to wit, "that the plaintiff was qualified for the job in question but passed over in favor of. . .a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext" for retaliation. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Here, there is no better evidence within this category than Scatchell being nominated for the Deputy Chief position, then that being tabled for no stated reason, and then Steven Rogowski being given it. If one adds this to the other circumstantial factors of motive and causation, this case has developed more than the convincing mosaic needed to get to a jury.

5. Scatchell, Sr. Has Shown A Genuine Issue Of Material Fact As To Whether Defendants Engaged In A Conspiracy To Deprive Him Of His First Amendment Rights.

Defendant finally makes a perfunctory argument that there is no evidence of an agreement to support a conspiracy claim, and that the intra-corporate conspiracy doctrine prevents a finding of a conspiracy. (Dkt. 94, p. 12). Again, in this entire section, Serpico does not cite a single Paragraph from the Rule 56 statement, and it should be found stricken for failure to comply with Local Rule 56 and this Court's Standing Order.

## CONCLUSION

For the foregoing reasons, Plaintiff Scatchell respectfully requests that this Honorable Court deny Defendant Serpico's Motion for Summary Judgment in its entirety, order this matter to be set for trial, and enter and order such other relief as this Court deems just and proper.

Respectfully submitted,

**JOHN SCATCHELL, SR.**

By:     */s/ Cass T. Casper*

_____
One of Plaintiff's Attorneys

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 351-2478
E: ccasper@dispartilaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing Plaintiff's Response to Defendant Ronald M. Serpico's Motion for Summary Judgment and Memorandum of Law in Support of His Motion for Summary Judgment (Dkts. 92, 93, 94) on all counsel of record via this Court's CM/ECF filing system on April 30, 2021, and that all such counsels are registered e-filers.

Jeffrey Fowler, Esq.
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
E: jfowler@lanermuchin.com

Michael Bersani, Esq.
Hervas, Condon & Bersani, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143
E: mbersani@hcbattorneys.com

K. Austin Zimmer, Esq.
Del Galdo Law Group, LLC
1441 South Harlem Avenue
Berwyn, Illinois 60402
E: zimmer@dlglawgroup.com

By:     */s/ Cass T. Casper*
_____